924 So.2d 242 (2005)
In the Matter of the MASHBURN MARITAL TRUST.
No. 2004 CA 1678.
Court of Appeal of Louisiana, First Circuit.
December 29, 2005.
Rehearing Denied March 30, 2006.
*243 Pierre V. Miller, II, Pierre Valcour Miller, New Orleans, for Appellant Helen Mashburn Penton, Co-Trustee of the Mashburn Marital Trust.
L. Kevin Coleman, New Orleans, for Appellees Joseph P. Mashburn and Don Mashburn, Co-Trustees and Managing Trustees of the Mashburn Marital Trust.
Walter Antin, Jr., Hammond, for Appellee Timothy R. Mashburn.
Craig J. Robichaux, Mandeville, for Appellee Rita Ann Mashburn.
Philip K. Wallace, Slidell, for Appellee Michael F. Smith, C.P.A.
Jonathan R. Schmidt, Hammond, Appellee in Proper Person.
Before: PARRO, GAIDRY, and WELCH, JJ.
WELCH, J.
This is an appeal by Helen Mashburn Penton, a co-trustee and a beneficiary of The Jack and Sadie Pugh Mashburn Marital Trust ("the Mashburn Marital Trust"), from a trial court judgment homologating an accounting of the trust rendered by Michael F. Smith, C.P.A., on behalf of Joseph P. Mashburn and Donald J. Mashburn, the managing co-trustees (and also two beneficiaries) of the Mashburn Marital Trust, and denying Helen Mashburn Penton's claim for reimbursement from the Mashburn Marital Trust for attorney fees and costs. For the following reasons, we affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL HISTORY
John S. ("Jack") Mashburn and Sarah ("Sadie") Pugh Mashburn had nine children (collectively referred to as the "Mashburn children"): namely, Helen Mashburn Penton, John S. Mashburn, Jr., Joseph P. ("Pat") Mashburn, Donald J. ("Don") Mashburn, Michael F. Mashburn, Rita Ann Mashburn, Timothy R. Mashburn, William T. Mashburn, and Richard A. Mashburn.
By an authentic act executed on June 8, 1984, Jack and Sadie Mashburn created the Mashburn Marital Trust. Jack and Sadie Mashburn were the initial income beneficiaries, and upon the death of both Jack and Sadie Mashburn, the Mashburn children were to succeed to their interest as the secondary income beneficiaries. The Mashburn children were also designated as the principal beneficiaries. Jack and Sadie Mashburn were designated as trustees, and upon their death, all of the principal beneficiaries were to serve as co-trustees, unless a principal beneficiary failed to take office within thirty days after notification of the right to serve and the requirements for taking office.[1]
*244 Sadie Mashburn died on February 23, 1996, after which Jack Mashburn remained the sole trustee and income beneficiary of the Mashburn Marital Trust. Pursuant to a judgment of possession rendered and signed on May 29, 1996, in those proceedings entitled, "In the Matter of the Succession of Sarah M. `Sadie' Mashburn," number 96-30,168 on the docket of the 21st Judicial District Court for the Parish of Tangipahoa, State of Louisiana, Jack Mashburn, as trustee of the Mashburn Marital Trust, was placed into possession of all of Sadie Mashburn's property, including her undivided, one-half interest in all assets of the former community of acquets and gains.
Jack Mashburn died on July 8, 2000. Rita Ann Mashburn and Michael Mashburn were named as the co-executors of the estate of Jack Mashburn in the succession proceedings. Helen Mashburn Penton, John Mashburn, Pat Mashburn, Don Mashburn, Michael Mashburn, and Richard Mashburn have all qualified for and been recognized as co-trustees of the Mashburn Marital Trust. Pursuant to a majority vote of the co-trustees, Pat Mashburn and Don Mashburn were elected as the "managing co-trustees" of the Mashburn Marital Trust.[2]
It is undisputed that during the period of time that Jack Mashburn administered the Mashburn Marital Trust as sole trustee (February 23, 1996, through July 8, 2000), he failed to render an annual account to the beneficiaries in accordance with La. R.S. 9:2088, and he failed to place all of the property in the trust that should have been placed therein. It is also undisputed that during this time period, Jack Mashburn gave money, in unequal amounts, to some of the Mashburn children. These undisputed facts lie at the core of this contentious litigation.
On November 7, 2001, Helen Mashburn Penton filed a rule to compel the filing of an account, wherein she sought to compel the co-executors of Jack Mashburn's estate to "render a clear and accurate final account" of Jack Mashburn's entire administration of the trust. On November 14, 2001, the trial court rendered judgment denying Helen Mashburn Penton's request, finding that a trustee's duty to render an account covering his administration of a trust was not a heritable obligation that the co-executors of the trustee's estate could be compelled to perform. That judgment is now final.
In May 2002, the managing co-trustees of the Mashburn Marital Trust retained Michael F. Smith, C.P.A. (who had also been Jack Mashburn's accountant), to perform tax and accounting services for the Mashburn Marital Trust. Shortly thereafter, a tax audit by the Internal Revenue Service ("IRS") concerning the estate of Jack Mashburn ensued, and the co-executors of Jack Mashburn's estate likewise retained the services of Michael F. Smith for those matters. On September 20, 2002, Michael F. Smith submitted a report, with five exhibits attached thereto, addressed to the co-executors of Jack Mashburn's estate, to the managing co-trustees of the Mashburn Marital Trust, and to Helen Mashburn Penton concerning the IRS audit of Jack Mashburn's estate, the Mashburn Marital Trust, and the financial affairs of Jack Mashburn from the time of Sadie Mashburn's death through his death.
On October 28, 2002, the managing co-trustees of the Mashburn Marital Trust *245 filed a petition for homologation,[3] requesting that the report prepared by Michael F. Smith on behalf of the managing co-trustees be accepted by the court as a final account of the Mashburn Marital Trust from September 18, 1996, to March 31, 2002, and further requesting that any objections to this account be overruled. Helen Mashburn Penton was the only beneficiary or trustee to oppose the homologation of the account. Further, Helen Mashburn Penton requested court authorization to retain the services of an attorney and a certified public accountant to prepare an account of the Mashburn Marital Trust, and she also requested that the Mashburn Marital Trust pay for such services. After a conference in chambers, the trial court deferred homologating the account in order to allow Helen Mashburn Penton the opportunity to complete further discovery concerning this issue.
Thereafter, the managing co-trustees reurged their petition for homologation of the account pursuant to the report prepared by Michael F. Smith. Again, Helen Mashburn Penton was the only beneficiary or trustee to oppose the homologation of the account. She also filed, among other things, a rule to pay attorney fees and related costs, contending that she had incurred approximately $10,937.59 in attorney fees and other expenses in furtherance of and in the performance of her obligations as a co-trustee of the Mashburn Marital Trust, and therefore requested reimbursement from the trust for these expenses. A hearing with regard to all these issues (and other related issues) was held on June 23, 2003. After the introduction of evidence and the receipt of post-trial memoranda, the trial court took the matter under advisement.
On October 29, 2003, the trial court rendered and signed a written judgment finding that the report prepared by Michael F. Smith complied with the facts and law, and therefore, homologated the account, ordered the Succession of John S. Mashburn to pay the Mashburn Marital Trust the sum of $355,112.93, and denied Helen Mashburn Penton's claim for reimbursement from the trust for her attorney fees and related costs. Helen Mashburn Penton timely filed a motion for a new trial, which the trial court denied by virtue of a judgment rendered in open court on January 12, 2004, and signed on January 26, 2004. It is from the October 29, 2003 and January 26, 2004 judgments that Helen Mashburn Penton now appeals.

ASSIGNMENTS OF ERROR
On appeal, Helen Mashburn Penton raises two assignments of error: (1) that the trial court erred in accepting Michael F. Smith's report and attached exhibits as an accounting sufficient to satisfy a trustee's duty under La. R.S. 9:2088; and (2) that the trial court erred in denying Helen Mashburn Penton's claim for reimbursement of fees and expenses pursuant to La. R.S. 9:2117 and 9:2191.

STANDARD OF REVIEW
It is well settled that an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, (2) further determine that the record establishes that *246 the fact finder is clearly wrong or manifestly erroneous. Stobart v. State, DOTD, 617 So.2d 880, 882 (La.1993).
With regard to questions of law, the appellate review is simply a review of whether the trial court was legally correct or legally incorrect. Hidalgo v. Wilson Certified Exp., Inc., 94-1322 (La.App. 1st Cir.5/14/96), 676 So.2d 114, 116 (citing O'Niell v. Louisiana Power & Light Co., 558 So.2d 1235, 1238 (La.App. 1st Cir. 1990)). On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and render judgment on the record. Franklin & Moore v. Gilsbar, Inc., 95-1520 (La.App. 1st Cir.5/10/96), 673 So.2d 658, 660.

LAW AND DISCUSSION

The Account
Helen Mashburn Penton contends that the account rendered by the managing co-trustees pursuant to the report prepared by Michael F. Smith does not comply with La. R.S. 9:2088, and therefore, the trial court erred in homologating or approving the account.
Louisiana Revised Statute 9:2088 provides, in pertinent part, as follows:
A. A trustee is under a duty to a beneficiary to keep and render clear and accurate accounts of the administration of the trust. If the trust is revocable, the trustee has a duty to account to the settlor only.
B. A trustee shall render to a beneficiary or his legal representative at least once a year a clear and accurate account covering his administration for the preceding year. His first annual account shall relate to the calendar year during which he became responsible for the trust property, or, at his option, the first accounting period of not more than twelve months and shall be rendered within ninety days after the expiration of that calendar year or accounting period. Each annual account shall show in detail all receipts and disbursements of cash and all receipts and deliveries of other trust property during the year, and shall set forth a list of all items of trust property at the end of the year.
* * *
D. A written approval by a beneficiary or his legal representative of an account rendered by a trustee shall be conclusive against the beneficiary with respect to all matters disclosed in the account. If a beneficiary or his legal representative fail or refuse to approve in writing an account rendered by a trustee, a trustee may apply to the proper court for an approval contradictorily with a beneficiary. An approval obtained from the proper court is conclusive against a beneficiary with respect to all matters disclosed in the account so approved.
At the outset, we note that this statute provides that the trustee shall account for his administration of the trust on an annual basis. It is undisputed that during Jack Mashburn's administration of the Mashburn Marital Trust, he failed to provide such annual accounting. At an earlier stage of these proceedings, the trial court correctly determined that the obligation of the trustee to provide this annual account was not a heritable obligation, which the co-executors of his estate could be compelled to perform. We also can find no authority, statutory or otherwise, which requires a successor trustee or trustees to provide an annual account for the administration of a previous trustee, but rather, La. R.S. 9:2088 provides that a trustee's first annual account relates to the calendar year or the first accounting period of not more than twelve months during which that trustee became responsible *247 for the trust property. In this case, Don Mashburn and Pat Mashburn did not become the managing co-trustees of the Mashburn Marital Trust until February 18, 2002, and therefore, had no obligation to provide an annual account of their administration of the Mashburn Marital Trust for any time period prior to the date they assumed responsibility for managing the trust property. Despite the fact that no obligation existed to render an account of the Mashburn Marital Trust by any person at that time, in October 2002, the managing co-trustees petitioned the trial court to approve Michael F. Smith's report and attached exhibits, as an account of the Mashburn Marital Trust from the time of Jack Mashburn's administration of the Mashburn Marital Trust through March 2002.
Keeping in mind the real obligations under the law of all parties to this proceeding, and the impossibility of compelling a deceased trustee to provide an annual account of his administration of the trust or to provide the information necessary to prepare such an account, we note that La. R.S. 9:2088 only requires that the trustee render a clear and accurate account of his administration of the trust (on an annual basis). There are no form requirements for the annual account under La. R.S. 9:2088, and the only information required to be contained in the annual account is that it (1) show in detail all receipts and disbursements of cash and all receipts and deliveries of other trust property during the year, and (2) set forth a list of all items of trust property at the end of the year.

1. Requirement that the account show in detail (a) all receipts and disbursements of cash and (b) all receipts and deliveries of other trust property during the year
The report of the account of the Mashburn Marital Trust prepared by Michael F. Smith clearly indicates that Jack Mashburn should have placed $499,469.09 into the Mashburn Marital Trust, which represents the net residual of Sadie Mashburn's estate.
Exhibit IV attached to the report lists four pieces of immovable property (with their legal descriptions set forth in the judgment of possession rendered in Sadie Mashburn's succession proceedings), and the report explains that three of these pieces of property were sold and the proceeds retained by Jack Mashburn.
Exhibit III attached to the report analyzes the only "liquid" asset of the Mashburn Marital Trust, an A.G. Edwards account, for the time period from its inception through March 2002, and it clearly shows the account's beginning balance, additions to the account balance (due to dividends, interest, and deposits), subtractions from the account balance (due to stock valuation, transfers, checks, and other withdrawals), and the account's ending balance. Accordingly, the requirement that the account show in detail all receipts and disbursements of cash and all receipts and deliveries of other trust property during the year was met by the report.

2. Requirement that the account set forth a list of all items of trust property
Exhibit IV attached to the report lists the following assets of the trust:

Present Trust
Asset Listing
A.G. Edwards $151,100.44
Cottage $ 17,500.00
Cash $ 17,029.00
 ____________
Item B $185,629.44

This exhibit also indicates that the Mashburn Marital Trust is owed a debt of *248 $355,112.93,[4] which the report explains is the amount owed from the estate of Jack Mashburn due to Jack Mashburn's failure to fully fund the Mashburn Marital Trust in accordance with the judgment of possession rendered in Sadie Mashburn's succession proceeding and due to Jack Mashburn's receipt and retention of (personally and not as trustee) the proceeds from the sales of the undivided interests of the Mashburn Marital Trust in three pieces of immovable property. Accordingly, the requirement that the account set forth a list of all items of trust property was met by the report.
Lastly, in this assignment of error, Helen Mashburn Penton further contends that the report is insufficient because it does not account for the administration of the nine individual trusts established by the Mashburn Marital Trust instrument. Section 9.09 of the Mashburn Marital Trust instrument provides:
Notwithstanding any language herein contained indicating otherwise, it is the intention of this instrument to create separate trusts for each of the principal beneficiaries hereinabove named and these shall be considered as separate and independent trusts for all purposes. These trusts are created in this single instrument for convenience in execution and administration of the trusts and the TRUSTEE is specifically authorized to administer the property of the several trusts together.
Thus, while the Mashburn Marital Trust instrument may have established nine separate trusts, it specifically authorized the trustee to administer the trust property of the trusts together. Since the trustee is authorized to administer the several trusts together, it logically follows that the trustee's account of his administration of the trust is likewise authorized to be rendered together.
Based on all of the above, we find that the trial court correctly determined that the report prepared by Michael F. Smith fully complied with La. R.S. 9:2088. Accordingly, we find no error in the trial court's judgment homologating the account pursuant to the report prepared by Michael F. Smith on behalf of the managing co-trustees, Pat Mashburn and Don Mashburn.

The Claim for Reimbursement for Fees and Expenses
Helen Mashburn Penton contends that, pursuant to the statutory provisions of the Louisiana Trust Code and the Mashburn Marital Trust instrument, she had the specific authority, as a co-trustee, to employ and to compensate from trust funds any attorney she deemed necessary for the administration of the trust. She further contends that she employed her attorney to ensure that the co-trustees met their statutory obligation to render "a clear and accurate account" of their administration to the beneficiaries of the trust, and that due to her efforts, an accounting was rendered, the sum owed from Jack Mashburn's estate to the Mashburn Marital Trust was determined, and the co-executors of Jack Mashburn's estate agreed to satisfy this debt. For these reasons, she argues that the trial court erred as a matter of law in denying her claim for reimbursement for fees and expenses. We disagree.
Louisiana Revised Statute 9:2241 implies that the trustee will select an attorney for the trustnot an attorney for each *249 trustee.[5] In this case, there are several trustees, and therefore, the attorney selected by the trustees was to be determined by a majority vote.[6] Pursuant to a majority vote of the trustees of the Mashburn Marital Trust at a meeting on February 18, 2002, Pat Mashburn and Don Mashburn were selected as the managing co-trustees. Pat Mashburn and Don Mashburn then selected Michael F. Smith as the accountant for the trust and Kevin Coleman as the attorney for the trust. There is no evidence in this record that a majority of the trustees of the Mashburn Marital Trust authorized or consented to Helen Mashburn Penton retaining an attorney or other professional on behalf of the Mashburn Marital Trust or that such fees and expenses would be paid from the funds of the Mashburn Marital Trust.
Moreover, indemnity from the trust for expenses is expressly limited to those "properly incurred by" the trustee in the administration of the trust. La. R.S. 9:2191. Properly incurred expenses are those "necessary to carry out the purposes of the trust." La. R.S. 9:2117.[7]
Helen Mashburn Penton contends it was due to her efforts that the accounting was rendered, that the sum owed from Jack Mashburn's estate to the Mashburn Marital Trust was determined, and that the co-executors of Jack Mashburn's estate agreed to satisfy this debt. However, the record establishes that the managing co-trustees selected Michael F. Smith, C.P.A. to perform accounting services for the Mashburn Marital Trust and to ultimately prepare a report accounting for the administration of the trust. Through this effort, the sum owed from Jack Mashburn's estate to the Mashburn Marital Trust was determined, and the co-executors of Jack Mashburn's estate have agreed to satisfy this debt. Michael F. Smith's efforts also culminated in a favorable result from the IRS tax audit of Jack Mashburn's estate  the Mashburn Marital Trust was upheld as a valid trust and the estate of Jack Mashburn received a federal tax refund of $109,270.00.
We find no evidence in the record before us to support Helen Mashburn Penton's contention that the fees and expenses were properly incurred by her and were necessary to carry out the purposes of the trust. Accordingly, we find the trial court properly denied Helen Mashburn Penton's claim for reimbursement for fees and expenses from the trust.

*250 CONCLUSION
After thoroughly reviewing the record, we find no error in the trial court's factual findings and legal conclusion that the report prepared by Michael F. Smith, on behalf of the managing co-trustees, Pat Mashburn and Don Mashburn, complied with La. R.S. 9:2088, and in its judgment homologating the account. Additionally, we find the trial court properly denied Helen Mashburn Penton's request for reimbursement for fees and expenses from the Mashburn Marital Trust, because there was no evidence that a majority of the trustees consented to her hiring an attorney or other professional who would be paid with funds from the Mashburn Marital Trust, that those expenses were properly incurred, and that those expenses were necessary to carry out the purposes of the trust.
All costs of this appeal are assessed to the appellant, Helen Mashburn Penton.
AFFIRMED.
NOTES
[1] Prior to the creation of the Mashburn Marital Trust, on December 18, 1975, Jack and Sadie Mashburn created the Mashburn Family Trust, with the Mashburn children designated as both the income and principal beneficiaries of the trust and with First Guaranty Bank of Hammond, Louisiana, designated as trustee. There are no issues pertaining to the Mashburn Family Trust in this appeal.
[2] Although not required by the terms of the Mashburn Marital Trust instrument, on January 21, 2003, the trial court rendered a judgment recognizing the status of the above six Mashburn children as co-trustees and the status of Pat Mashburn and Don Mashburn as managing co-trustees.
[3] This petition for homologation of the account of the Mashburn Marital Trust is captioned as an amended petition; however, the record before us does not contain an original petition for homologation.
[4] Michael F. Smith's report also explained that the Mashburn Marital Trust allowed Jack Mashburn to invade the corpus of the trust for his "support, medical care, and well-being." Funds so withdrawn from the trust totaled $41,273.28.
[5] When these proceedings commenced, La. R.S. 9:2241(B) provided:

If an attorney is not named to handle legal matters relating to the trust or, if named, becomes at any time incapable of acting or resigns, then the beneficiaries of the trust or their duly qualified representatives shall select an attorney to handle legal matters relating to the trust. However, if the trustee is a natural person meeting the other requirements of R.S. 9:1783, then the trustee shall select the attorney.
However, La. R.S. 9:2241 was amended by 2003 La. Acts, No. 480, § 1, to provide: "The trustee shall select the attorney to handle legal matters relating to the trust. The appointment of an attorney in the trust instrument is not binding on the trustee." Regardless of which version of this statute is applied herein, the implication that one attorney will be selected by the trustee remains the same.
[6] See La. R.S. 9:2114. Additionally, Section 8.02 of the Mashburn Marital Trust instrument provides, in part: "All actions of TRUSTEES shall be on the simple majority note (sic) of all TRUSTEES who cast votes."
[7] We note that Section 7.08 of the Mashburn Marital Trust instruments authorizes the trustees (pursuant to a majority vote under Section 8.02) "[t]o employ and to compensate out of trust funds accountants, brokers, attorneys, realtors, and other assistants or advisors deemed by it to be necessary in the administration of the trusts hereunder; and to pay all necessary expenses of administering any trust, including taxes, trustee's fees and services of agents and attorneys."