WELCH, J.
lain this protracted litigation, Joseph Patton (“Pat”) Mashburn and Donald J. (“Don”) Mashburn, in their capacities as the managing co-trustees of the Jack and Sadie Pugh Mashburn Marital Trust (“marital trust”) and Pat Mashburn and Richard A. Mashburn, in their capacities as the co-trustees of the Mashburn Family Trust (“family trust”) appeal a trial court judgment that ordered the nine beneficiaries of the marital trust and the nine beneficiaries of the family trust to be paid equal amounts of income for the year 2008; ordered the managing co-trustees of the marital trust and the co-trustees of the family trust to disburse to Timothy R. (“Tim”) Mashburn and Helen Mashburn Penton, both of whom are beneficiaries of the marital trust and the family trust, the same sums of income that they distributed to the other beneficiaries of those trusts; and rendered judgment for those sums in favor of Tim Mashburn and Helen Mash-burn Penton and against the respective co-trustees of each trust. Tim Mashburn has answered the appeal seeking damages for frivolous appeal. For reasons that follow, we affirm in part and reverse in part the judgment of the trial court, and deny the answer to appeal.
*1138 FACTUAL AND PROCEDURAL HISTORY
John S. (“Jack”) and Sarah (“Sadie”) Pugh Mashburn had nine children: Helen Mashburn Penton, John S. Mashburn, Jr., Pat Mashburn, Don Mashburn, Michael F. Mashburn, Rita A. Mashburn, Tim Mash-burn, William T. Mashburn, and Richard Mashburn. By an authentic act executed on December 18, 1975, Jack and Sadie Mashburn created the family trust, with their nine children designated as both the income and principal beneficiaries of the trust. By an authentic act executed on June 8, 1984, Jack and Sadie Mashburn also created the marital trust. With regard to the marital trust, Jack and Sadie Mashburn were the initial income beneficiaries, and upon their death, their nine children were to succeed to their interest as the secondary income beneficiaries. Jack and Sadie Mashburn’s nine |3children were also designated as the principal beneficiaries.
Following the deaths of Jack and Sadie Mashburn, the two trusts they established have been the subject of extensive litigation in both the trial court and this court. See In Re Mashburn Marital Trust, 2004-1678 (La.App. 1st Cir.12/29/05), 924 So.2d 242, writ denied, 2006-1034 (La.9/22/06), 937 So.2d 384 (“Mashburn Marital Trust (I) ”); In Re Mashburn Marital Trusts, 2006-0741, 2006-0742, 2005-0887 (La.App. 1st Cir.12/28/06), 951 So.2d 1136, writs denied, 2007-0403, 2007-0446 (La.4/20/07), 954 So.2d 164, 167 (“Mashburn Marital Trust (II) ”); In Re Mashburn Marital Trust, 2006-1753, 2006-1754, 2005-0887 (La.App. 1st Cir.12/28/06), 947 So.2d 852 (unpublished opinion), writ denied, 2007-0403 (La.4/20/07), 954 So.2d 164 (‘Mashburn Marital Trust (III) ”), and In Re Mashburn Marital Trust, 2008-0450 (La.App. 1st Cir.10/31/08), 994 So.2d 157 (unpublished opinion) (“Mashburn Marital Trust (TV) ”); see also In Re Mashburn Marital Trust, 2005-1343 (La.App. 1st Cir.8/8/05) (unpublished writ action); In Re Mashburn Marital Trust, 2005-1759 (La.App. 1st Cir.10/17/05) (unpublished writ action); In Re Mashburn Marital Trust, 2005-1785 (La.App. 1st Cir.10/17/05) (unpublished writ action); In Re Mashburn Marital Trust, 2008-0534 (La.App. 1st Cir.3/20/08) (unpublished unit action); In Re Mashburn Marital Trust, 2008-1619 (La.App. 1st Cir.4/9/09) (unpublished writ action).
Both the authentic act creating the family trust and the authentic act creating the marital trust settled nine separate trusts, one for the sole benefit of each of Jack and Sadie Mashburris nine children, who are the income and principal beneficiaries of their respective trusts. See Mashburn Marital Trust (II), 2006-0741 at p. 14, 951 So.2d at 1146-1147. Each of the nine trusts settled by the family trust are to be considered, managed, and administered by one trustee (or one set of co-trustees) and each of the nine trusts established in the marital trust are to |4be considered, managed, and administered by one trustee (or one set of managing co-trustees). The assets of the nine trusts established by the family trust may be commingled and managed as one and the assets of the nine trusts established by the marital trust may be commingled and managed as one. See Mashburn Marital Trust (II), 2006-0741 at pp. 14-15, 951 So.2d at 1147.
Pat Mashburn and Richard Mashburn were appointed by the court on August 19, 1997 as the co-trustees of the family trust. See Mashburn Marital Trust (II), 2006-0741 at pp. 3-4, 951 So.2d at 1139-1140. After the deaths of Jack and Sadie Mash-burn, Helen Mashburn Penton, John Mashburn, Pat Mashburn, Don Mashburn, Michael Mashburn, and Richard Mashburn all qualified for and were recognized by the court as co-trustees of the marital trust. Pursuant to a majority vote of the *1139 co-trustees, Pat Mashburn and Don Mash-burn were elected as the managing co-trustees of the marital trust. See Mashburn Marital Trust (II), 2006-0741 at p. 6, 951 So.2d at 1141-1142; and Mashburn Marital Trust (I) 2004-1678 at pp. 2-3, 924 So.2d at 243-244.
All of the litigation referenced above has involved either Helen Mashburn Penton or Tim Mashburn (or both of them) against the managing co-trustees of the marital trust or the co-trustees of the family trust (or both). The present dispute involves a motion to compel the trustees to distribute the 2008 income, which was filed by Tim Mashburn on April 27, 2009. In his motion, Tim Mashburn requested an order compelling the co-trustees of the family trust to distribute to him the 2008 income from his family trust in the amount of $6,970.89 and an order compelling the managing co-trustees of the marital trust to distribute to him the 2008 income from his marital trust in the amount of $1,736.00. Tim Mashburn also asserted, and it was undisputed, that seven of his siblings had been distributed their shares of income from their respective family trusts and marital trusts, but that he had not received his share of income, which had been divided and distributed to his seven | .^siblings. Helen Mashburn Penton also did not receive her share of income from her marital trust or her family trust, and also claimed that her share of income from both trusts was divided and distributed to her seven siblings. Therefore, on May 13, 2009, Helen Mashburn Penton filed a similar motion to compel the distribution of her 2008 income from both trusts.
A hearing on both motions was held on May 18, 2009.[1] At the hearing, it was undisputed that neither the co-trustees of the family trust nor the managing co-trustees of the marital trust had distributed any income from those trusts to either Tim Mashburn or Helen Mashburn Penton for 2008, and evidently, only a partial distribution was made to them in 2007.[2] The co-trustees of the family trust and the managing co-trustees of the marital trust maintained that Tim Mashburn and Helen Mashburn Penton were not entitled to be distributed income from either trust for three reasons, with only one of those reasons being applicable to Helen Mashburn Penton.
First, the co-trustees of the family trust and the managing co-trustees of the marital trust determined that, after the above-cited decisions of this court became final, since Helen Mashburn Penton and Tim Mashburn had litigated for their own, individual benefit, rather than for the benefit of all the beneficiaries of the trusts, the litigation expenses incurred by the co-trustees of the family trust and the managing co-trustees of the marital trust would be allotted on a pro rata basis to the individual trusts of Helen Mashburn Penton and Tim Mashburn.
Second, the managing co-trustees of the marital trust determined that since lfiTim *1140 Mashburn had received principal distributions from his marital trust that he was not entitled to receive, see Mashburn Marital Trust (II), 2006-0741 at p. 13, 951 So.2d at 1146, and had not returned or paid back those distributions, there was little or no principal remaining in Tim Mashburn’s marital trust to produce income to be distributed to him.
Finally, the co-trustees of the family trust determined that Tim Mashburn had caused a significant loss to the family trust, which loss should be assessed to Tim Mashburn’s family trust. Specifically, Tim Mashburn had filed a notice of lis pendens in the mortgage records of Tangipahoa Parish affecting immovable property owned by the family trust, which later affected the co-trustees’ ability to obtain a construction loan related to that immovable property. Although the notice of lis pendens was eventually cancelled, there was a delay in a construction loan being issued (and in the commencement of the construction itself), which resulted in an increase in the cost of the construction due to that delay. Since the co-trustees of the family trust believed that the lis pendens was improper, they determined that the increase in the cost of the construction due to the delay caused by the lis pendens would be assessed to Tim Mashburris family trust.
Therefore, the managing co-trustees of the marital trust and the co-trustees of the family trust contended that after a full pro rata portion of the legal expenses was allotted to the family trust and marital trust of both Helen Mashburn Penton and Tim Mashburn, the amount of principal still owed to Tim Mashburris marital trust was considered, and the family trust construction delay losses assessed to Tim Mashburris family trust, the result was that neither Helen Mashburn Pentoris nor Tim Mashburris marital or family trust had any income to distribute.
After the hearing, the trial court issued written reasons determining that
an arbitrary and unilateral allocation of litigation expenses incurred by nine separate [f|amily [tjrusts and ... [mjarital [t]rust[s], for a total of 18 trust[s] is [not] authorized. Until this [c]ourt, or some higher 17[c]ourt determines the allocation of costs and the reasonableness of the attorney’s fees, such arbitrary and unilateral charging of these costs to two individual beneficiaries of four individual trusts, is unwarranted. [3]
Therefore, ... the [trustees hereby are ordered to distribute to Helen Mash-burn Penton and [Tim] Mashburn the same sum that was paid to the other trustees ... [and] that the nine beneficiaries be paid an equal sum for the year 2008.
On June 17, 2009, the trial court signed a written judgment ordering the nine beneficiaries of the marital trust and the nine beneficiaries of the family trust to be paid equal amounts of income for the year 2008; ordering the managing co-trustees of the marital trust and the co-trustees of the family trust to disburse to Tim Mashburn and Helen Mashburn Penton the same sums of income that they distributed to the other beneficiaries of those trusts; rendering judgment in favor of Tim Mashburn *1141 and Helen Mashburn Penton against the co-trustees of the family trust in the amount of $6,970.89 each; and rendering judgment in favor of Tim Mashburn and Helen Mashburn Penton against the managing co-trustees of the marital trust in the amount of $1,736.00 each. From this judgment the managing co-trustees of the marital trust and the co-trustees of the family trust have appealed, asserting that the trial court erred in finding that the managing co-trustees of the marital trust and the co-trustees of the family trust lacked the authority to allocate costs and expenses to the various beneficiaries of the trust in accordance with which beneficiary caused such expenses to be incurred. Tim Mashburn has answered the appeal seeking damages for frivolous appeal.
LAW AND DISCUSSION
Paragraph 1.3 of the family trust provides that “[t]he property delivered to|8the Trustee under this Trust, shall be divided into equal shares, one share for the benefit of each of the Settlors’ children, as beneficiaries of both principal and income. Each share shall be held as and shall constitute a separate Trust.” Additionally, paragraph 1.4 of the family trust provides that “[a]ll of the income of each Trust shall be paid to the beneficiary of that Trust annually, or such more frequent intervals as the Trustee may see fit.”
Paragraph 4.05 of the marital trust provides that
Upon termination of the interest of the first income beneficiaries, SET-TLORS children (or, if any be deceased, their children, per stirpes) shall succeed to such interest and become secondary income beneficiaries. At that point, the TRUSTEE shall distribute to or for the benefit of the secondary income beneficiaries:
all of the income of the trust, the frequency of such payments to be at least annually.
As previously noted, the co-trustees of the family trust and the managing co-trustees of the marital trust contend that Tim Mashburn and Helen Mashburn Pen-ton were not entitled to be distributed the 2008 income from their respective family trust and marital trust for three reasons, two of which applied solely to Tim Mash-burn. Therefore, we will separately address each of these reasons.

Allocation of Litigation Expenses

At the outset, we recognize the well settled principle that attorney fees are not recoverable unless expressly authorized by statute or by a contract between the parties. See Huddleston v. Bossier Bank and Trust Co., 475 So.2d 1082, 1085 (La.1985); Tassin v. Golden Rule Ins. Co., 94-0362, p. 14 (La.App. 1st Cir.12/22/94), 649 So.2d 1050, 1058. However, the issue herein is not the recovery of attorney fees by the managing co-trustees of the marital trust and the co-trustees of the family trust from Tim Mashburn and Helen Mashburn Penton, but rather, whether litigation expenses, including attorney fees, that were incurred by the managing co-trustees of the marital trust and the co-trustees of the family in the 19administration of the trusts, can be allocated to and deducted solely from the income of Tim Mashburn and Helen Mashburn Penton.
In determining whether the co-trustees of the family trust and managing co-trustees of the marital trust were authorized to allocate those expenses to Tim Mashburn and Helen Mashburn Penton, we must look to the specific provisions of the trust instruments. See La. R.S. 9:2061 (providing that the nature and extent of the duties and powers of the trustee are determined from the provisions of the trust instrument, except as otherwise expressly provided in the Louisiana Trust Code).
Paragraph 6.1 of the family trust instrument provides:
*1142 The Trastee shall have all of the powers that may be exercised by the Trustee under Louisiana law, including, but not limited to, those powers that Trustees are permitted to exercise under the provisions of the Louisiana Trust Code, Chapter 1, Part 5, and such additional powers as may hereinafter be permitted Trustees by Louisiana law.
Additionally, Paragraph 6.11 provides:
The Trustee shall have in the ... administration of the ... property forming the subject of this Trust, the widest latitude and authority permitted by Louisiana law.
Section VII of the marital trust provides:
The Trustees are granted all of the authority which may be conferred on Trustees by the Louisiana Trust Code. Such authority shall include, but not limited to, the following powers:
7.01 To determine what is principal and what is income with respect to all receipts and disbursements .... to determine the proper basis for any transactions between the trusts administered by it and to allocate to each trust its proportionate part of said income, receipts and expenses; and to partite and to distribute property of the trust in kind or in undivided interests, and to determine the value of such property.
Thus, both trust instruments provide the trustees with the maximum powers allowable under Louisiana law. However, the maximum powers allowable under Louisiana law are not synonymous with unlimited powers. Louisiana law provides that a trustee shall administer the trust solely in the interest of the beneficiary; | inwhen there is more than one beneficiary, a trustee shall administer the trust impartially, based on what is fair and reasonable to all of the beneficiaries, except to the extent that the trust instrument manifests an intention that the trustee shall or may favor one or more of the beneficiaries.[4] La. R.S. 9:2082. The trustee shall administer the trust as a prudent person. La. R.S. 9:2090. The trustee shall also take, keep control of, and preserve trust property. La. R.S. 9:2091. The trustee is also commanded to defend actions that may result in a loss to the trust estate, unless doing so would not be reasonable. La. R.S. 9:2093.
The powers of the trustee are those conferred upon the trustee by the trust instrument or those that are necessary or appropriate to carry out the purposes of the trust (and not forbidden by the trust instrument). La. R.S. 9:2111. If discretion is conferred upon a trustee with respect to the exercise of a power, its exercise of discretion shall not be subject to control by the court, except to prevent an abuse of discretion by a trustee. La. R.S. 9:2115. A trustee may incur expenses necessary to carry out the purposes of the trust, not forbidden by the trust instrument, and other expenses authorized by the provisions of the trust instrument. La. R.S. 9:2117. The trustee has the right to be indemnified from trust property for all properly incurred expenses. La. R.S. 9:2191. The trustee is also authorized to select an attorney to represent the trust. La. R.S. 9:2241.
Based on these provisions, there is no dispute that the co-trustees of the family trust and the managing co-trustees of the marital trust were authorized to defend the trust in these protracted proceedings, to incur litigation expenses, including attorney fees, and to pay or be indemnified for those expenses from trust funds, as such expenses were necessary in the administration of the trust.
*1143 However, the co-trustees of the family trust and managing co-trustees of the marital trust contend that since Tim Mashburn and Helen Mashburn Penton have 11 instigated these proceedings and have been litigating over the years for their own interests, and not in the interests of the other beneficiaries, the litigation expenses incurred by the co-trustees of the family trust and by the managing co-trustees of the marital trust in responding to that litigation should be allocated to Tim Mashburn and Helen Mashburn Pen-ton’s respective family and marital trusts under La. R.S. 9:2141, which provides that “[a] trust shall be administered with due regard to the respective interests of the beneficiaries in the allocation of receipts and expenditures.” They further contend that to allocate those expenses equally among all of the beneficiaries of those trusts would be unfair, unreasonable, and without due regal'd to the interests of the other seven beneficiaries of the trust. Additionally, the co-trustees of the family trust and the managing co-trustees of the marital trust contend that the Louisiana Supreme Court’s holding in Hughes v. Burguieres, 276 So.2d 267 (La.1973) supports their position on this issue.
First, we find that La. R.S. 9:2141 is not applicable to the resolution of this issue. Louisiana Revised Statutes 9:2141 is entitled “General rule” and is the first statute contained in subpart D, “Allocation to Income and Principal,” of the Louisiana Trust Code. A cursory review of the statutes following the general rule, ie., La. R.S. 9:2142-9:2157, indicates that the allocation of receipts and expenditures referenced in La. R.S. 9:2141 is an allocation between income and principal, not an allocation among beneficiaries. Therefore, this provision concerns the allocation of expenditures, such as the litigation expenses at issue, between income or principal, not the allocation of those expenses to particular beneficiaries.
However, we do find Hughes to be instructive on this issue. In Hughes, a suit for declaratory judgment was filed by Abner Hughes, the trustee of 26 trusts provided in the last will and testament of Jules Burguieres, against the beneficiaries of those trusts. After Jules Burguieres died and his will was probated, 26 separate Intrusts were set up, each encompassing l/26th of the decedent’s residual estate. The decedent’s will contained a proviso that the bequest to any legatee named in the will was revoked if the legatee instituted any suit making demand upon the decedent, his brothers, their estates, the estate of their deceased father, decedents will, or the management of J.M. Burguieres Company, Ltd. Hughes, 276 So.2d at 267-268.
Gregory Burguieres, one of the trust beneficiaries, sent a letter to the family corporation demanding that certain actions be taken, and thereafter, filed a stockholder’s derivative action against the corporation. The trustee then instituted the suit for declaratory judgment, seeking a determination as to whether Gregory Burguieres’s actions violated the conditions of the will so as to warrant forfeiture of his trust. The trial court determined that Gregory Burguieres did not violate the proscriptive provisions of the decedent’s will by the institution of a suit against the corporation. It concluded, however, that since Gregory Burguieres’s actions were solely responsible for causing the suit for declaratory judgment, he alone should bear the court costs and attorney fees of $1,500.00 that were incurred by the trustee. The trial court ordered the costs to be deducted from the income of the trust administered for the benefit of Gregory Burguieres. Hughes, 276 So.2d at 268. An appeal was taken by Gregory Burguieres, and this court affirmed the trial court’s ruling easting him for court costs and attorney fees. However, the supreme court granted writs as to the *1144 issue of who should pay the court costs and attorney fees incurred by the trustee in the suit for declaratory judgment. Hughes, 276 So.2d at 269.
The supreme court found that the trustee’s actions in filing the suit for declaratory judgment were justified, given that Gregory Burguieres’s derivative action presented a question of possible forfeiture of rights as a trust beneficiary under the conditions of the decedent’s will. The supreme court found no doubt that |1sthe trustee was entitled to have the court costs and attorney fees paid. The issue to be determined was whether those expenses were to be charged to Gregory Burgui-eres’s trust or whether the expenses should be prorated and charged to all 26 trusts provided by the decedent’s will. Hughes, 276 So.2d at 269.
The supreme court noted:
The 26 trusts provided in the testament are all contingent upon the same assets and are managed by the same trustee. The trusts are all subject to the prescriptive conditions of the testament, and each bears a direct relationship to the others with regard to any action taken in violation of those conditions. In the petition in this suit the trustee recognized his duty to institute this suit on behalf of ‘the trusts’ and for the benefit of ‘all beneficiaries’. The fiduciary obligations owed by the trustee are the same for each beneficiary.
[[Image here]]
[In finding that the 26 trusts should be treated as a single trust, the appellate court stated:] ‘By the terms of the testator’s will, we are here concerned with the novel situation of [26] separate and individual, but nonetheless related trusts, under the management and control of a single trustee. The will also proscribes certain designated actions which, if committed by any beneficiary, will directly affect not only his own interests, but also those of the beneficiaries of the remaining [25] trusts. To this extent, each individual trust bears a relationship to and has an inchoate interest in every other trust. To this degree, the individual trusts may in effect be deemed one. Equally certain is the fact that it is the obligation of the trustee to protect the interest of each individual beneficiary in the event of a suspected violation of the terms of the decedent’s will by one or more beneficiaries.’
Hughes, 276 So.2d at 270.
Thus, in Hughes, the supreme court determined that because the trustee had instituted suit for the benefit of all of 26 trusts (or all 26 beneficiaries), the attorney fees and court costs (or litigation expenses) incurred by the trustee should be charged to the income (and if necessary from the principal) of all 26 trusts. Hughes, 276 So.2d at 270-271. The co-trustees of the family trust and the managing co-trustees of the marital trust contend that from this holding, it follows that if litigation expenses incurred by a trustee are not incurred for the benefit of all trusts or beneficiaries, like the litigation instigated by Tim Mashburn and Helen |14Mashburn Penton, then those expenses should be allocated to the trust or beneficiary that caused those expenses to be incurred. However, we do not interpret Hughes so broadly.
The nine trusts settled by the marital trust are contingent upon the same assets and managed by the same set of co-trustees, and the nine trusts settled by the family trust are contingent upon the same assets and managed by the same set of co-trustees. While we agree with the co-trustees of the family trust and the managing co-trustees of the marital trust that Tim Mashburn and Helen Mashburn Pen-ton have litigated for their own personal benefit, rather than for the benefit of all of *1145 the trusts or beneficiaries,[5] the co-trustees of the family trust and the managing co-trustees of the marital trust have both maintained and defended these actions in order to protect the trusts or trust property, and therefore, acted on behalf of all the tx’usts and all of the beneficiaries. Therefore, the litigation expenses incurred by the co-trustees of the family trust and the managing co-trustees of the marital trust should be assessed pro rata from the income (and if necessary from the principal) of all nine marital trusts and all nine family trusts.[6]
Accordingly, we find that the trial court correctly determined that the co-trustees of the family trust and the managing co-_Jtrustees16 of the marital trust were not entitled to allocate litigation expenses to Tim Mashburn and Helen Mashburn Pen-ton based on the nature of the litigation to date. Since the allocation of litigation expenses was the only issue applicable to Helen Mashburn Penton, the provisions of the June 17, 2009 judgment of the trial court that ordered Helen Mashburn Pen-ton to be paid the same sums of income from the marital trust and the family trust that the other seven beneficiaries had received and rendered judgment in favor of Helen Mashburn Penton against the managing co-trustees of the marital trust in the amount of $1,736.00, and against the co-trustees of the family trust in the amount of $6,970.89, are affirmed.

Principal Payments from the Marital Trust to Tim Mashburn

Prior to the appeal in Mashburn Marital Trust (II), the trial court ordered the managing co-trustees of the marital trust to distribute the sum of $2,000.00 per month to Tim Mashburn from the income of his marital trust, and if necessary, from its principal. Mashburn Marital Trust (II), 2006-0741 at p. 2, 951 So.2d at 1139. In Mashburn Marital Trust (II), 2006-0741 at pp. 12-13, 951 So.2d at 1145-1146, we reversed the judgment of the trial court, concluding that Tim Mashburn was not entitled to distributions from the principal of his marital trust. However, prior to the managing co-trustees of the marital trust perfecting a suspensive appeal of the trial court’s judgment ordering the monthly payment, distributions from the principal of Tim Mashburn’s marital trust were made to him.[7]
*1146 The managing co-trustees of the marital trust assert, and Tim Mashburn does not dispute, that the principal distributions made to Tim Mashburn from his marital trust total $41,848.00 and that Tim Mash-burn has not returned or paid that sum |1ñback to the principal of his marital trust. Thus, the managing co-trustees of the marital trust claimed that Tim Mashburn was not entitled to be distributed any income for 2008 from his marital trust because there was no principal remaining in Tim Mashburn’s marital trust to produce income and because Tim Mashburn owed the principal back.
Louisiana Revised Statutes 9:2195 provides “If a trustee makes an advance or loan of trust money to a beneficiary, the beneficiary’s interest is subject to a charge for the repayment of the amount advanced or lent.” Since Tim Mashburn received an advance (that he was not entitled to) of principal from his marital trust in the amount of $41,848.00, Tim Mashburn’s interest in the marital trust is subject to a charge for repayment of that amount. Tim Mashburn’s interest in the marital trust is as income beneficiary and principal beneficiary. Therefore, the managing co-trustees of the marital trust can retain any amounts payable to Tim Mashburn from income or principal until the amount of the advance is paid back. Accordingly, we find that the managing co-trustees of the marital trust are authorized to retain the income that Tim Mashburn is entitled to receive (from the marital trust) until the amount of the principal advanced has been repaid.
However, as noted herein, the trial court did not rule on whether Tim Mashburn owed the principal distributions that he improperly received back to his marital trust, and in fact, never mentioned that Tim Mashburn had received such distributions. Rather, the trial court ruled that Tim Mashburn was entitled to be paid the same, equal amount of income for 2008 from his marital trust that the other beneficiaries were entitled to receive from their marital trusts and rendered judgment for that amount ($1,736.00). Since we have determined that the managing co-trustees of the marital trust were authorized to retain the income to be distributed to Tim Mashburn until the amount of the principal previously advanced has been paid back, we must conclude that the trial court erred in ordering that Tim 117Mashburn was entitled to receive the same income for 2008 from the marital trust as the other beneficiaries had received and in rendering judgment in favor of Tim Mashburn and against the managing co-trustees of the marital trust in the amount of $1,736.00. Accordingly, we reverse these portions of the judgment of the trial court.

Notice of Lis Pendens filed by Tim Mash-bum

On August 3, 2005, Tim Mashburn filed a notice of lis pendens in the mortgage records of Tangipahoa Parish (filing number 69,8417 recorded in book 1380, page 799) that affected four parcels of immovable property, including one owned by the family trust and referred to by the parties as the “Gateway Shopping Center” in Ponchatoula, Louisiana. The co-trustees of the family trust were not aware that the notice of lis pendens had been filed until it was discovered during a title search by the bank that was issuing a construction loan to the co-trustees for making improvements to the Gateway Shopping Center. Since the construction loan was to be secured by the Gateway Shopping Center property, the bank re *1147 fused to issue the construction loan until the notice of lis pendens was removed. Tim Mashburn refused to voluntarily remove the notice of lis pendens, citing his pending claim for the distribution of income or “retained earnings” from the family trust. See Mashburn Marital Trust (IV), 2008-0450 at pp. 1-3. Therefore, the co-trustees of the family trust had to file a motion in these proceeding requesting the removal of the notice of lis pendens.
After a hearing on the matter, the trial court granted the motion. However, the delay between the discovery of the notice and its actual removal or cancellation from the mortgage record, resulted in a delay in issuing the construction loan to the co-trustees, which in turn delayed the construction of the improvements on the Gateway Shopping Center. According to the co-trustees, the delay in construction caused an approximate $178,000.00 increase in the cost of the construction. The 11sco-trustees of the family trust asserted that while the propriety of the initial filing of the notice of lis pendens was questionable, Tim Mashburn’s refusal to voluntarily remove the notice was clearly improper once judgment had been rendered against his claims in Mashburn Marital Trust (TV). Therefore, the co-trustees contended that the $178,000.00 increase in construction costs should be assessed to Tim Mashburn’s family trust.
First, we can find no authority that allows a trustee to assess an increased cost or a potential loss to a beneficiary. Although the co-trustees of the family trust contend that their actions are authorized by La. R.S. 9:2141, we disagree with their interpretation of this statute. Louisiana Revised Statutes 9:2141 requires that the trust be administered (by the trustee) with due regard to interests of the beneficiaries in the allocation of “receipts” and “expenditures” to principal or income. Although the entire cost of construction on the Gateway Shopping Center was an “expenditure” to be allocated, only the expenditure itself is authorized to be allocated — not the amount by which the expenditure was increased. Thus, the increase in the cost of construction due to a delay in the construction loan was not a “receipt” or “expenditure” to be allocated to principal or income under La. R.S. 9:2141.
Furthermore, if there was a $178,000.00 increase in the cost of construction due to a delay in the construction loan, that amount constitutes a financial loss to or a damage sustained by the trust. If this loss or damage was through the fault of or caused by Tim Mashburn’s actions — either in initially filing the notice of lis pendens or in subsequently refusing to remove it— then the co-trustees remedy is an action for damages against Tim Mashburn for the wrongful filing of a notice of lis pendens. See La. C.C. art. 2315; La. R.S. 9:2231. However, like any other claim for damages, there must be a determination of liability and damages, and until there is such a determination, the claim for damages is unliquidated. Since |13there has been no determination — judicial or otherwise — of Tim Mashburn’s liability and/or the damage sustained by the trust, the claim of the co-trustees of the family trust against Tim Mashburn for the wrongful filing of the notice lis pendens is an unliq-uidated claim for damages.
Louisiana law does not permit the use of an unliquidated claim for damages to offset a liquidated claim. See American Bank v. Saxena 553 So.2d 836, 844-46 (La.1989). As such, the co-trustees of the family trust cannot use their unliquidated claim for damages against Tim Mashburn to offset the income Tim Mashburn is entitled to be distributed from his family trust on an annual basis. Therefore, we find that the trial court’s implicit rejection of this claim *1148 of co-trustees of the family trust was correct.
Accordingly, the provisions of the June 17, 2009 judgment of the trial court that ordered Tim Mashburn to be paid the same sums of income from the family trust as the other beneficiaries received and that rendered judgment in favor of Tim Mash-burn against the co-trustees of the family trust in the amount of $6,970.89 are affirmed.
ANSWER TO APPEAL
Tim Mashburn has filed an answer to appeal seeking damages for frivolous appeal pursuant to La. C.C.P. art. 2133 and 2164 and Uniform Rules — Courts of Appeal, Rule 2-19. In order to assess damages for a frivolous appeal, it must appear that the appeal is taken solely for the purpose of delay or that counsel does not seriously believe in the view of the law that he advocates. Guarantee Systems Construction & Restoration, Inc. v. Anthony, 97-1877, p. 13 (La.App. 1st Cir.9/25/98), 728 So.2d 398, 405, writ denied, 98-2701 (La.12/18/98), 734 So.2d 636. Because we have found merit to this appeal and because we do not find that this appeal was taken solely for the purpose of delay or harassment or that counsel for the managing co-trustees of the marital trust and the co-trustees of the family trust 120did not seriously believe the position he advocated, Tim Mashburn’s request for frivolous appeal damages is denied.
CONCLUSION
For all of the above and foregoing reasons, the June 17, 2009 judgment of the trial court is affirmed insofar as it ordered that Tim Mashburn and Helen Mashburn Penton were entitled to receive the same sums of income for 2008 from their family trust as the other seven beneficiaries; rendered judgment in favor of Tim Mashburn and against the co-trustees of the family trust in the amount of $6,970.89; rendered judgment in favor of Helen Mashburn Penton and against the co-trustees of the family trust in the amount of $6,970.89; ordered that Helen Mashburn Penton was entitled to receive the same sum of income for 2008 from her marital trust as the other seven beneficiaries; and rendered judgment in favor of Helen Mashburn Penton and against the managing co-trustees of the marital trust in the amount of $1,736.00. The June 17, 2009 judgment of the trial court is reversed insofar as it ordered that Tim Mashburn was entitled to receive the same sum of income for 2008 from his marital trust and rendered judgment in favor of Tim Mashburn and against the managing co-trustees of the marital trust in the amount of $1,736.00. Tim Mashburn’s request for damages for frivolous appeal is denied.
All costs of this appeal are assessed, in equal amounts, to: Timothy Mashburn; Joseph Patton Mashburn and Richard Anthony Mashburn, in their capacities as the co-trustees of the Mashburn Family Trust; and Joseph Patton Mashburn and Donald J. Mashburn, in their capacities as the managing co-trustees of the Jack and Sadie Pugh Mashburn Marital Trust.
AFFIRMED IN PART; REVERSED IN PART; ANSWER TO APPEAL DENIED.
GAIDRY, J., concurs in part and dissents in part with reasons.
CARTER C.J. concurs.

. Helen Mashburn Penton’s motion was not set for hearing on May 18, 2009 and was not served on either the managing co-trustees of the marital trust or on the co-trustees of the family trust. Nevertheless, the trial court addressed her motion. Although the managing co-trustees of the marital trust and the co-trustees of the family trust assigned error to the trial court’s action in this regard, at oral argument, this objection was withdrawn in the interest of judicial efficiency. Accordingly, in this appeal, we will address the motions of both Tim Mashburn and Helen Mashburn Penton.

. A motion to compel the distribution of the 2007 income is one of the issues raised in the companion case also rendered this date, In Re Mashburn Marital Trust, 2010-1104 (La.App. 1st Cir.12/22/10), ("Mashburn Marital Trust (VI) ").

. The trial court’s reasons for judgment were silent with respect to the claim of managing co-trustees of the marital trust concerning the principal distributions Tim Mashburn improperly received from the marital trust and the claim of the co-trustees of the family trust concerning the loss sustained by the family trust due to the notice of Us pendens. Silence in a judgment as to any issue or claim that is placed before the trial court is deemed a rejection of that claim or demand. Robertson v. Sun Life Financial, 2009-2275, p. 5 (La.App. 1st Cir.6/11/10), 40 So.3d 507, 510. Therefore, we conclude that the trial court denied those claims.

. In this case, neither the marital trust instrument nor the family trust instrument manifests the intent that the trustee shall or may favor one or more of the beneficiaries.

. Tim Mashburn and Helen Mashburn Penton are already responsible for their own litigation expenses that they have incurred. See generally, Mashburn (I), 2004-1678 at pp. 10-12, 924 So.2d 248-249.

. Although we agree that Tim Mashburn and Helen Mashburn Penton have litigated for their own benefit, there has been no finding that Tim Mashburn and Helen Mashburn Pen-ton have instigated frivolous or unfounded proceedings against the trustees in bad faith or are otherwise abusing the process of the court. If a trust beneficiary instigates an unfounded or frivolous proceeding against the trust or trustee in bad faith, the trial court may have the power to charge the reasonable and necessary fees incurred by the trustee in opposing the proceeding against that beneficiary’s share of the trust estate. See Rudnick v. Rudnick, 179 Cal.App.4th 1328, 1335, 102 Cal.Rptr.3d 493, 498; Conley v. Waite, 134 Cal.App. 505, 506, 25 P.2d 496, 496-497 (1933). Bogert, Trusts and Trustees (rev.2d ed.1981) § 802, pp. 143-144. Furthermore, although we recognize as a general rule that attorney fees are not allowed as an item of damages or costs except where authorized by statute or called for in a contract, abuse of process has been recognized as an exception to that rule. Citizens, Electors & Taxpayers of Tangipahoa Parish v. Layrisson, 449 So.2d 613, 616 (La.App. 1st Cir.1984), writ denied, 452 So.2d 170 (La.1984). Additionally, to the extent that any party files a pleading in violation of La. C.C.P. art. 863, the appropriate sanctions are available under that article. See also Matter of Alvin R. Albritton Testamentary Trust, 597 So.2d 23, 26 (1992).

.In Mashburn Marital Trust (III), 2006-1753 at p. 3, we also determined that Tim Mash-bum was not entitled to distributions from the principal of his family trust; however, it *1146 appears that the co-trustees of the family trust perfected a suspensive appeal of that judgment prior to any distributions from the principal of Tim Mashburn's family trust being made to him.