WELCH, J.
12Joseph Patton (“Pat”) Mashburn and Donald J. (“Don”) Mashburn, in their capacities as the managing co-trustees of the Jack and Sadie Pugh Mashburn Marital Trust (“marital trust”) and Pat Mashburn and Richard A. Mashburn, in their capacities as the co-trustees of the Mashburn Family Trust (“family trust”) appeal a trial court judgment that ordered the managing cotrustees of the marital trust and the co-trustees of the family trust to disburse to Timothy R. (“Tim”) Mashburn and Helen Mashburn Penton, both of whom are beneficiaries of the marital trust and the family trust, the 2007 income from their respective marital and family trusts; ordered the co-trustees of the family trust to allocate and distribute delayed income from the family trust; and rendered judgment for those sums in favor of Tim Mashburn and Helen Mashburn Penton and against the respective co-trustees of each trust. For reasons that follow, we amend the judgment, and as amended, the judgment is affirmed in part and reversed in part.
FACTUAL AND PROCEDURAL HISTORY
The background facts of this case are more fully set forth in this court’s opinion in the companion case, also rendered this date, In Re Mashburn Marital Trust, 2010-0278 (La.App. 1st Cir.12/22/10), 52 So.3d 1136 (“Mashburn Marital Trust (V)”), wherein the managing co-trustees of the marital trust and co-trustees of the family trust challenged a trial court judgment ordering the co-trustees of the family trust and the managing co-trustees of the marital trust to distribute to Tim Mash-burn and Helen Mashburn Penton the income from their respective marital trust and family trust for the year 2008, and ordering that such sum be the same sums of income that they distributed to the other beneficiaries of those trusts. For addi *1129 tional background facts, see In Re Mashburn Marital Trust, 2004-1678 (La.App. 1st Cir.12/29/05), 924 So.2d 242, writ denied, 2006-1034 (La.9/22/06), 937 So.2d 384 (“Mashburn Marital Trust (I)”); In Re Mashburn Marital Trusts, 2006-0741, 2006-0742, 2005-0887 (La.App. 1st Cir.12/28/06), 951 So.2d 1136, writs denied, 2007-0403, 2007-0446 (La.4/20/07), 954 So.2d 164, 167 (“Mashburn Marital Trust (II)”); In Re Mashburn Marital Trust, 2006-1753, 2006-1754, 2005-0887 (La.App. 1st Cir.12/28/06), 947 So.2d 852 (unpublished opinion), writ denied, 2007-0403 (La.4/20/07), 954 So.2d 164 (“Mashburn Marital Trust (III)”), and In Re Mashburn Marital Trust, 2008-0450 (La.App. 1st Cir.10/31/08), 994 So.2d 157 (unpublished opinion) (“Mashburn Marital Tmst (IV)”).
On June 24, 2009, after Tim Mashburn obtained the favorable judgment in the trial court at issue in Mashbum Marital Tmst(V) with respect to the distribution of income for 2008, Tim Mashburn filed a motion to compel the co trustees of the family trust and the managing co-trustees of the marital trust to distribute the 2007 income from his family trust and his marital trust.[1] For the same reasons that the co-trustees of the family trust and the managing co-trustees of the marital trust did not distribute the 2008 income from the trusts to Tim Mashburn and Helen Mashburn Penton, they distributed only part of the 2007 income from both trusts to Tim Mashburn and Helen Mashburn Pen-ton.
Prior to filing the motions to compel the distribution of income for 2007 and 2008, Tim Mashburn had filed, on May 9, 2008, a motion to allocate and distribute delayed income from the family trust. In this motion, Tim Mashburn alleged that on June 27, 1991, the predecessors of the current co-trustees of the family trust acquired an interest in certain unimproved, immovable property located on Coburn Road North (“Coburn Road property”) by cash deed, and that on May 29, 2003 the co-trustees of the family trust sold the trust’s interest in the Lproperty. Tim Mashburn further alleged that during the time the Coburn Road property was held by the family trust, it produced no income, and as such, was underproductive property as defined by La. R.S. 9:2155. In accordance with La. R.S. 9:2155, Tim Mashburn contended that the co-trustees of the family trust should have allocated a portion of the sale proceeds to income and distributed those sums, but that they failed to do so. Accordingly, Tim Mashburn requested that the court order the distribution of that delayed income to him. On May 13, 2009, Helen Mashburn Penton filed a motion to allocate and distribute delayed income, essentially adopting the same allegations and request for relief as Tim Mashburn’s motion.
In response, the co-trustees of the family trust filed a peremptory exception raising the objections of prescription and per-emption. The trial court overruled the objections by judgment signed on July 21, 2008.[2] A hearing with respect to the motions to allocate and distribute delayed income and the motions to compel the distribution of the 2007 income was held on August 31, 2009.[3] At the conclusion of the *1130 hearing, the trial court took the matter under advisement. On December 4, 2009, the trial court issued written reasons for judgment finding that “both [Tim] Mash-burn and Helen Mashburn Penton should share equally in the fruits of the two sets of nine identical trusts,” and “to arrive at that goal, the [c]ourt hereby orders the Trustees to pay each [Tim] Mashburn and Helen Mashburn Penton their withheld trust income [for 2007] of $2,597.00 and their delayed income of $34,005.00 from the Coburn Road property, each, for a total of $36,602.00 each.” A written judgment reflecting the .trial court’s ruling in |fithis regard was signed on February 24, 2010[4], and it is from this judgment that the managing co-trustees of the marital trust and the co-trustees of the family trust have appealed.
On appeal, the co-trustees of the family trust and the managing co-trustees of the marital trust assert that the trial court erred in determining that Tim Mashburn and Helen Mashburn Penton were entitled to equal amounts of income for 2007. Additionally, with respect to claim for delayed income due to unproductive property, they assert that the trial court erred in overruling their peremptory exception raising the objections of prescription and peremption,[5] and alternatively, in determining that delayed income, in the amount of $34,005.00, was owed to Tim Mashburn and Helen Mashburn Penton.
MOTION TO DISTRIBUTE 2007 INCOME
In Tim Mashburn’s motion to compel the distribution of 2007 income from the marital and family trusts, he alleged that the managing co-trustees of the marital trust had not distributed to him the 2007 income from his marital trust in the amount of $1,015.00, and that the co-trustees of the family trust had not distributed to him the 2007 income from his family trust in the amount of $1,582.00. Therefore, he requested an order compelling the co-trustees of each trust to distribute this income to him. Helen Mashburn Penton joined Tim Mashburn in this motion.
The co-trustees of the family trust and the managing co-trustees of the 1 ¿marital trust did not dispute that those sums had not been paid to Tim Mashburn and Helen Mashburn Penton. Instead, they contended that Tim Mashburn and Helen Mash-burn Penton were not entitled to the same sums of income as the other beneficiaries and to the distribution of all of the income for 2007 for the same reasons that they contended Tim Mashburn and Helen Mashburn Penton were not entitled any income for 2008, i.e., that after the litigation expenses incurred by the co-trustees were allocated to the trusts of Helen Mashburn Penton and Tim Mashburn on a pro-rata basis, there was no income left to distribute; that there was little to no in *1131 come to be distributed to Tim Mashburn, since he had received principal distributions from the marital trust that he was not entitled to receive and had not paid back; and that the increase in the cost of the construction incurred by the family trust as a result of the alleged wrongful notice of lis pendens was to be assessed to the income of Tim Mashburn’s family trust.
The issues raised in this appeal with regard to the 2007 income are the same as the issues raised with regard to the 2008 income and are fully addressed in the opinion in the companion case also rendered this date, Mashburn Marital Trust (V). For the reasons set forth in Mashburn Marital Trust (V), we find that the managing co-trustees of the marital trust and the co-trustees of the family trust were not authorized to allocate litigation expenses to Helen Mashburn Penton or Tim Mash-burn. As such, the February 24, 2010 judgment of the trial court is affirmed in insofar as it renders judgment in the amount of $2,597.00 in favor of Helen Mashburn Penton and against the managing co-trustees of the marital trust and the co-trustees of the family trust.
Also for the reasons set forth in Mashburn Marital Trust (V), we find that the managing co-trustees of the marital trust were authorized to retain the 2007 income to be distributed to Tim Mashburn from his marital trust |7($1,015.00) until the amount of the principal previously advanced to Tim Mashburn has been paid back; however, the co-trustees of the family trust cannot use them unliquidated claim for damages against Tim Mashburn to offset the 2007 income Tim Mashburn was entitled to be distributed from his family trust. The judgment of the trial court did not distinguish the amount of income owed to Tim Mashburn for 2007 by co-trustees of the family trust from the amount of income owed to him by the managing co-trustees of the marital trust. Instead, the judgment orders the co-trustees of both trusts to pay the total sum of $2,597.00, representing the 2007 income that was withheld from both trusts. Therefore, with respect to Tim Mashburn, we amend the judgment of the trial court to order the co-trustees of the family trust to distribute to Tim Mashburn the withheld income for 2007 in' the amount of $1,582.00. As amended, these provisions of the February 24, 2010 judgment are affirmed.
MOTION TO ALLOCATE AND DISTRIBUTE DELAYED INCOME
The family trust acquired the Coburn Road property from Jack and Sadie Mash-burn on June 27, 1991, purportedly for the sum of $90,000.00. The Coburn Road property was held by the trust as an investment for 12 years until May 29, 2003, when it was sold for $675,000.00.
Tim Mashburn contends that the Co-burn Road property produced no income while held by the trust and, therefore according to La. R.S. 9:2155, is considered “underproductive” from January 1, 1991 through May 29, 2003. Additionally, he contends that part of the sale proceeds should be allocated to income for the years it was underproductive and paid to him according to the terms of his trust.
Louisiana Revised Statutes 9:2155, entitled “[ujnderproductive property,” provides:
A portion of the net proceeds of sale of any part of principal that |shas not produced an average net income (including the value of any beneficial use of the property by the income beneficiary) of at least one percent per annum of its inventory value for more than a year shall be treated as delayed income to which the income beneficiary is entitled as provided in this section. The net *1132 proceeds of sale are the gross proceeds received, including the value of any property received in substitution for the property disposed of, less expenses, including income taxes, incurred in disposition and less carrying charges accrued while the property was underproductive. The sum allocated as delayed income is the difference between the net proceeds and the amount that, had it been invested at simple interest at four percent per annum while the property was under-productive, would have produced the net proceeds. That sum, plus any carrying charges and expenses previously charged against income while the property was underproductive, less any income received by the income beneficiary from the property and less the value of any beneficial use of the property by the income beneficiary, is income, and the balance is principal.
Property becomes underproductive at the beginning of the year in which it fails to produce an average net income of at least one percent per annum.
If there are successive income beneficiaries, the delayed income shall be divided among them or their heirs, legatees, or assignees according to the length of the period during which each was entitled to income.
If principal subject to this section is disposed of by conversion into property that cannot be apportioned easily, the income beneficiary is entitled to the net income from the substituted property while it is held. If within five years after the conversion the substituted property has not been further converted into easily apportionable property, no allocation as provided in this section shall be made.
This section does not apply to any period during which the trustee is under an express direction not to sell or dispose of the principal or to any period before the income from a legacy begins to accrue to the benefit of the income beneficiary.
In response to the motion to allocate and distribute delayed income, the co-trustees of the family trust filed a peremptory exception raising the objections of prescription and peremption, which was based on La. R.S. 9:2234. Louisiana Revised Statutes 9:2234 provides:
A. An action for damages by a beneficiary against a trustee for any act, omission, or breach of duty shall be brought within two years of the date that the trustee renders, by actual delivery or mail to the beneficiary, or if the beneficiary lacks legal capacity, the | sbeneficiary’s legal representative, to the last known address of the beneficiary and that of the legal representative if any, an accounting for the accounting period in which the alleged act, omission, or breach of duty arising out of the matters disclosed therein occurred. However, such actions shall in all events, even as to actions within two years of disclosure, be filed within three years of the date that the trustee renders an accounting for the accounting period in which the alleged act, omission, or breach of duty occurred. If a beneficiary is a minor when a trustee’s accounting for the accounting period in which the alleged act, omission, or breach of duty occurred is rendered, the prescriptive period of two years begins to run from the day he reaches the age of eighteen years.
B. Any action by a beneficiary against a trustee other than those described on Subsection A of this Section is prescribed by two years beginning from the date that the trustee renders his final account to the beneficiary.
C. The provisions of this Section are remedial and apply to all causes of action for damages without regard to the *1133 date when the alleged act, omission, or breach of duty occurred. The two-year and three-year periods of limitation provided for in this Section are peremptive periods within the meaning of Civil Code Article 3458, and in accordance with Civil Code Article 3461 may not be renounced, interrupted, or suspended. Notwithstanding the foregoing, a beneficiary shall have one year from July 9, 1999, to bring an action for damages against a trustee arising out of an act, omission, or breach of duty for a transaction disclosed in any prior accounting.
D. Notwithstanding any other provision of law, all actions brought in the state against any trustee, the prescriptive and peremptive period shall be governed exclusively by this Section.
The trustees contended that the sale of the Coburn Road property, the sales price, the expenses, and tax deductions resulting from the sale were reported and disclosed to all of the beneficiaries at the family meeting on May 25, 2004. Tim Mashburn attended this family meeting and received copies of the 2003 annual account, the meeting agenda, and the settlement statement for the sale of the Coburn Road property. Helen Mashburn Penton attended the same meeting and received the same information at the same time. Thus, the trustees contend that under La. R.S. 9:2234(A), the peremptive period for Tim Mashburn and Helen Mashburn’s claim elapsed two years after Tim Mashburn received the 2003 annual account (or on May 25, 2006). The co-trustees of the | infamily trust further contend that even if the various accounts had not been delivered to Tim Mashburn, the very last day to bring his action was three years from the date the 2003 annual account was rendered, or on May 25, 2007. Thus, when Tim Mashburn brought his motion seeking delayed income from that sale approximately four years later on May 9, 2008, the peremptive period had already elapsed. The co-trustees of the family trust contend that the trial court erred in overruling the objection.
In response to the objections, Tim Mashburn and Helen Mashburn Penton asserted that their action neither claimed any wrongful act, omission or breach of duty by the co-trustees nor did it seek damages against the co-trustees, but rather, sought the proper distribution of trust income required under La. R.S. 9:2155 and the trust instrument. Accordingly, Tim Mashburn and Helen Mashburn Penton contended that La. R.S. 9:2234(A) is inapplicable, since that provision is limited to claims for damages. Tim Mashburn and Helen Mashburn Penton further contended that their action is governed by La. R.S. 9:2234(B), which provides for a two-year peremptive period that runs from the date of the trustee’s final accounting to the beneficiary in any action by a beneficiary against a trustee other than an action described by La. R.S. 9:2234(A). Further, they maintain that since there is no dispute that the co-trustees of the family trust have not rendered a final account in this matter,[6] their action would be neither perempted nor prescribed under La. R.S. 9:2234(B).
Therefore, the deciding factor as to whether Tim Mashburn’s and Helen Mash-burn’s claim is perempted or prescribed is whether their motion to distribute and allocate delayed income is an action for “damages” due to an “act, omission, or breach of duty” by the co-trustees. See La. R.S. 9:2234(A). Based on our review of the pleadings, we conclude that they have not asserted such a | nclaim for damages. The remedy Tim Mashburn and Helen Mashburn Penton are seeking from *1134 the co-trustees is the distribution of delayed income that they were purportedly entitled to receive under the terms of La. R.S. 9:2155 and the family trust instrument. Neither Tim Mashburn nor Helen Mashburn Penton have alleged any intentional misconduct by the co-trustees or that the co-trustees breached a fiduciary duty. Rather, they only allege that the co-trustees should have allocated a portion of the sale proceeds to income and distributed it, but they did not.
Therefore, because we have concluded that Tim Mashburn and Helen Mashburn Penton’s motion to allocate and distribute delayed income is not an action for damages, the applicable prescriptive and per-emptive periods are set forth in La. R.S. 9:2234(B) and commence to run from the date of the final accounting. Since the final accounting by the co-trustees of the family trust has not occurred, Tim Mash-burn’s and Helen Mashburn Penton’s claims for delayed income are neither prescribed nor perempted. Thus, the trial court properly overruled the co-trustees’ peremptory exception raising the objections of prescription and peremption.
With regard to the merits of the claim for the distribution of delayed income, the parties stipulated to the following facts:
Jack and Sadie Mashburn established the family trust for the benefit of each of their nine children. Pat and Richard Mashburn are the co-trustees of the family trust. Tim Mashburn and Helen Mash-burn Penton are the beneficiaries of the family trust established for his benefit. The family trust requires all income to be distributed. On June 27, 1991, the family trust acquired the Coburn Road property by a cash deed from Jack and Sadie Mash-burn, but in truth and in fact, the property was gifted by Jack and Sadie Mashburn to the family trust, a one-ninth undivided interest each, without consideration. The 1 ]2Coburn Road property produced no income during the period that it was owned by the family trust. The family trusts neither incurred nor accrued any carrying charges or other expenses with respect to the Coburn Road property during the period that it was owned by the family trust. The family trust sold the property to Oak Knoll, L.L.C. on May 29, 2003. The family trust continuously owned the property from the time of acquiring it on June 27, 1991, thx-ough and until the time of its sale on May 29, 2003. The entire amount received by the family trust from the sale of the property to Oak Knoll, L.L.C. and all of the expenses incident'to that sale are shown on the HUD settlement statement dated May 29, 2003, and prepared by Nita Gorrell for the sale of the Coburn Road property by the family trust to Oak Knoll, L.L.C. The family trust sold the property for $675,000.00. Everything the family trust received from the sale of the Coburn Road property was shown on the HUD statement. The family trust received no property other than cash in exchange or substitution for the property on its sale to Oak Knoll, L.L.C. All expenses incurred by the family trust on the sale of the property to Oak Knoll were itemized on the HUD statement. Tim Mashburn and Helen Mashburn Penton had no beneficial use of the Coburn Road property while it was owned by the family trust. None of the Coburn Road property’s sale proceeds were allocated to income and distributed to the beneficiaries of the family trust.
Following these stipulations, the parties agreed that the only issues to be resolved were whether a distribution of delayed income was to be made as a matter of law, and if so, the amount of the distribution, ie., the proper calculation of that distribution. The trial court’s written reasons are silent with respect to the Coburn Road property, other than its order that the co-trustees of the family trust pay Tim Mash- *1135 burn and Helen Mashburn Penton “their delayed income of $34,005.00 from the Co-burn Road property....”
| i3The testimony at the hearing on this matter established that the Coburn Road property was sold on May 29, 2003, without objection by any of the beneficiaries. After the sale and payment of capital gains taxes, the net proceeds were invested first into stocks and bonds at Merrill Lynch and then used to purchase the leasehold improvements in the Gateway Shopping Center and to make other improvements to trust property. Prior to this investment, the family trust owned only the land on which the shopping center was built. All of these events — the sale and the purchase of the leasehold improvements — took place within one year of the sale of the Coburn Road property. The testimony also established that the income of the family trust has increased by more than thirty percent due to investment of the sale proceeds into the shopping center and other assets and that all of the beneficiaries of the family trust have accepted this enhanced income.
Based on this evidence, we must conclude that Tim Mashburn and Helen Mashburn Penton were not entitled to a distribution of delayed income from the family trust. Under La. R.S. 9:2155, if underproductive property “is disposed of by conversion into property that cannot be apportioned easily, the income beneficiary is entitled to the net income from the substituted property while it is held. If within five years after the conversion the substituted property has not been further converted into easily apportionable property, no allocation as provided in this section shall be made.” The Coburn Road property was sold, and its proceeds converted or invested into the leasehold improvements on the Gateway Shopping Center, which is property that “cannot be apportioned easily.” The beneficiaries have enjoyed the net income from the Gateway Shopping Center, and the proceeds from the sale have been invested in that property for more than five years. Thus, under the specific terms of La. R.S. 9:2155, no allocation of delayed income for underproductive property can be | i4made.
Since the trial court incorrectly concluded otherwise, we reverse that portion of the February 24, 2010 judgment of the trial court ordering the co-trustees ofithe family trust to pay to Helen Mashburn Penton and Tim Mashburn, each, the delayed income from the Coburn Road property in the amount of $34,005.00, and that portion of the judgment ordering that Helen Mashburn Penton and Tim Mashburn be paid the total amount of $36,602.00, plus interest.
CONCLUSION
For all of the above and foregoing reasons, the February 24, 2010 judgment of the trial court is amended and, as amended, is affirmed in part and reversed in part.
All costs of this appeal are assessed, in equal amounts, to: Timothy Mashburn; Helen Mashburn Penton; Joseph Patton Mashburn and Richard Anthony Mash-burn, in their capacities as the co-trustees of the Mashburn Family Trust; and Joseph Patton Mashburn and Donald J. Mashburn, in the capacities as the managing co-trustees of the Jack and Sadie Pugh Mashburn Marital Trust.
AMENDED, AND AS AMENDED, AFFIRMED IN PART; REVERSED IN PART.
GAIDRY, J., concurs in part and dissents in part with reason.
CARTER, C.J., concurs.

.The record before us does not contain the motion to compel the distribution of the 2007 income filed by Helen Mashburn Penton. However, there is no dispute that Helen Mashburn Penton joined Tim Mashburn in this motion.

. With regard to this ruling, the co-trustees of the family trust filed an application for supervisory writs with this court, which was denied on April 9, 2009. See In Re Mashburn Marital Trust, 2008-1619 (La.App. 1st Cir.4/9/09) (unpublished writ action).

. At the hearing, the trial court also consid *1130 ered and denied the motion for new trial with respect to the motions to compel the distribution of the 2008 income.

. The judgment in the record actually reflects that it was signed on February 24, 2009, but this is obviously an inadvertent typographical error. The hearing in this matter was not held until August 31, 2009; therefore, the trial court could not have signed a judgment before the hearing. The notice of rendition of judgment issued by the clerk of court confirms that the judgment was signed on February 24, 2010.

. A judgment overruling an exception is generally considered an interlocutory judgment and is not appealable. See La. C.C.P. arts. 1841 and 2083. However, in this case, we can consider the correctness of this interlocutory judgment in conjunction with the appeal of the February 24, 2010 judgment in favor of Tim Mashburn and Helen Mashburn Penton, which is a final and appealable judgment. See People of Living God v. Chantilly Corp., 251 La. 943, 947-948, 207 So.2d 752, 753 (1968).

. See La. R.S. 9:2088.