MICHAEL E. KIRBY, Judge.
| iTommy Taylor Thomas, a certified public accountant, appeals a district court judgment dismissing his petition for judicial review of an order of the State Board of Certified Public Accountants of Louisiana (“the Board”) that revoked his license and imposed an administrative fine of $16,000.00. LSA-R.S. 49:964(G)[1] of the Administrative Procedure Act[2] enumerates the exclusive grounds upon which an administrative agency’s decision may be reversed or modified on appeal. Because we find none of those grounds exists in this case, we affirm the judgment.
|2In the 1980s, Carl and Irmgard Se-well [3], an elderly couple, retained the professional services of Mr. Thomas, a partner in the certified public accounting firm of Thomas, Hunter & Company, LLP (“the firm”). In 1996, the Sewells executed wills that named Mr. Thomas the executor of their respective estates and executed powers of attorney in his favor. Initially, Mr. Thomas only prepared annual tax returns for the Sewells. However, in 1998 the firm began providing “Elder Care Services.” After receiving a brochure advertising these services, the Sewells met with Mr. Thomas to discuss the matter, but never signed any agreement. In September 2000, Mr. Thomas prepared a letter and had Mr. and Mrs. Sewell sign it, which stated, among other things, that “Any un-billed services of Thomas, Hunter <& Company, LLP are to be billed and paid by your estate.”
In June 2002, Mr. Thomas began invoicing the Sewells $250.00 per month for elder care services. The monthly fee increased to $300.00 in October 2003. The Sewells timely paid for all services invoiced through July 2004. Notwithstand- *1105 mg the monthly invoices, Mr. Thomas also prepared invoices itemizing any hourly services that he and his wife performed for the couple; these invoices, totaling $40,597.00, included charges dating back to 1996.[4] Mr. Thomas kept the itemized hourly invoices in a file at his office and never sent them to the Sewells.
|¡;On October 16, 2003, Mr. and Mrs. Sewell each executed a durable power of attorney in favor of Mr. Thomas. On July 19, 2004, two days before Mr. Sewell’s death, Mr. Thomas brought Mrs. Sewell to Hibernia Bank where she opened a checking account (“Special Account”) in the name of “Irmgard Sewell or Tommy Taylor Thomas.” Both Mrs. Sewell and Mr. Thomas were listed as authorized signatories on the account. Although all of the Sewells’ financial accounts were addressed to Mrs. Sewell, the Special Account was addressed to Mr. Thomas’ office. A Se-well Hibernia Bank certificate of deposit, in the amount of $7,141.11, and a $20,000.00 check drawn on Mrs. Sewell’s Merrill Lynch account were deposited into the Special Account.
On July 26, 2004, Mr. Thomas used the power of attorney to withdraw $50,000.00 from Mrs. Sewell’s Barksdale Federal Credit Union account and deposited the money in the Special Account. On August 2, 2004, Mr. Thomas wrote a check drawn on the Special Account made payable to Hibernia Bank in the amount of $40,597.00.[5] In return, Hibernia Bank issued a cashiers check made payable to “Thomas Hunter” in the amount of $40,597.00, which he deposited into his firm’s account. After a bank employee notified Mrs. Sewell of the transactions by Mr. Thomas, Mrs. Sewell retained legal counsel to revoke the power of attorney and to obtain her financial records from him.
In July 2005, Mr. Richard M. John, Mrs. Sewell’s attorney, filed a complaint with the Board, alleging that Mr. Thomas had breached his legal and fiduciary 14duties to Mrs. Sewell. Specifically, the complaint alleged that when Mrs. Sewell learned of the above transactions and began to question Mr. Thomas about them, he indicated that the money paid to his firm was for the elder services he had rendered. However, during the time period in question, the Sewells were being billed for those services in the amount of $250.00 to $300.00 per month, which they promptly paid. At no time were the Sewells ever invoiced for any other charges relating to elder services. The complaint further alleged that Mrs. Sewell received the itemized hourly invoices only after she revoked Mr. Thomas’ power of attorney and had her lawyer request her financial records.
The Board notified Mr. Thomas of the complaint, requested a response and commenced an investigation. In response, Mr. Thomas denied any wrongdoing and claimed Mrs. Sewell knew of the fees charged for the services, as the firm had included the fee range in its tax engagement letter to its clients each year. However, he admitted that the Sewells had not signed an engagement letter or contract. Pursuant to a subpoena duces tecum, Mr. Thomas turned over the Sewells’ records to the Board. Eventually, Mr. Thomas was charged with numerous violations of *1106 the Louisiana Accountancy Act, LSA-R.S. 37:71 et seq., and the Louisiana Administrative Code (“LAC”) § 46:XIX relative to the professional and occupational standards of certified public accountants.
Following an administrative hearing[6], the Board found that Mr. Thomas was dishonest in dealing with his clients; used his power of attorney to pay his firm’s | ¿bill; engaged in self-dealing; failed to send invoices to his clients; and engaged in conduct that brought dishonor, or was detrimental, to the accounting profession. Specifically, it determined Mr. Thomas had committed violations of LSA-R.S. 37:79 A(4), (8) and (11)[7]; LAC § 46:XIX.1701.-B(l)[8]; LAC § 46:XIX.1707.A(2)[9]; and LAC § 46:XIX.1707.A(11)[10]. As a result, the Board revoked his license, and ordered him in to pay an administrative fine of $16,000.00 and all costs incurred by the Board in the proceedings. The Board stayed the revocation of his license for a period of two (2) years provided Mr. Thomas complied with the Board’s |(iorder. The Board further ordered that during the stay Mr. Thomas was prohibited from acting as a fiduciary for any client.[11] After the trial court denied his petition for judicial review of the Board’s order, Mr. Thomas appealed.
In the first of three assignments of error, Mr. Thomas contends the Board *1107 violated his constitutional right to due process because he never had the opportunity to confront his accuser, Mrs. Sewell, who did not appear at the administrative hearing. We find no merit to this assignment of error.
In Driscoll v. Stucker, 04-0589, p. 24 (La.1/19/05), 893 So.2d 32, 50, the Louisiana Supreme Court stated that the “[gjenuine unavailability of a witness is the jurisprudential requirement to obviate constitutional confrontation problems. Furthermore, a witness is not unavailable for purposes of the exception to the confrontation requirement unless the authorities have made a diligent and good faith effort to obtain his presence at trial.” (Citations omitted). The record discloses that the Board, at the request of Mr. Thomas, issued a subpoena to Mrs. Se-well, which was served on her attorney, Mr. John.[12] Because Mrs. Sewell had moved to Germany shortly after the filing of the complaint but before the administrative hearing, she was not available to testify as a witness. The Board clearly made a good faith effort to compel Mrs. Sewell’s appearance at the hearing. Also, as noted by the trial court in her reasons for judgment, Mr. John filed the actual complaint with the Board, not Mrs. Se-well.
17Mr. Thomas also claims that the Board erred in allowing Mr. John to testify at the hearing because a court should not allow an attorney to act as both a key witness and advocate for a party, citing Gutierrez v. Travelers Ins. Co., 358 So.2d 349 (La.App. 4th Cir.1978). As previously mentioned, Mr. John filed the actual complaint. In that regard, the Board did not err in allowing Mr. John to testify.
Also, this case is distinguishable from Gutierrez. In that case, the attorney, the plaintiffs stepson, represented her in a workers’ compensation claim against her deceased husband’s (his late father’s) former employer. At the trial, the attorney also testified as a material witness for the plaintiff; his testimony was a substantial part of her case. The appellate court annulled the judgment and remanded the ease for a new trial, finding that the attorney had violated the Code of Professional Responsibility by serving as both the plaintiffs advocate in pursuing her claim and as a material witness on her behalf. In the instant case, Mr. John was not the complaint counsel at the adjudication proceeding nor was Mrs. Sewell an actual party to it.
In his second assignment of error, Mr. Thomas contends the Board’s imposition of the $16,000.00 administrative fine violated LSA-R.S. 37:79(A), which allows the Board to impose an administrative fee not to exceed two thousand dollars ($2,000.00) per violation.[13] He claims that the Board found only Rfour violations— dishonesty, misuse of the power of attorney, self-dealing, and failure to send invoices — and, therefore, the imposed fine should not exceed $8,000.00. We disagree.
The $1,000.00 limit (see n. 13, infra) is not a limit per statute or rule violated. Rather it is a limit for each violation of a statute or rule. The Board found Mr. *1108 Thomas had violated six different statutory provisions and rules and, in some instances, committed multiple violations of a statutory provision and/or rule, e.g., he sent the Sewells deceptive or misleading invoices on ten separate occasions. In view of the evidence, we find the Board exercised restraint in imposing a total administrative fine of $16,000.00.
In the final assignment of error, Mr. Thomas argues that the Board erred in imposing sanctions based on hearsay evidence. Again, he refers to the absence of testimony from Mrs. Sewell to verify the allegations against him. Without her testimony, Mr. Thomas argues, the Board’s findings are based on hearsay evidence. We find no merit to this argument.
Five witnesses, including Mr. Thomas, testified at the hearing and 43 exhibits were introduced into evidence. The documentary evidence was obtained by subpoena from Mr. Thomas. The written decision indicates that the Board sustained several charges against Mr. Thomas, including misuse of the power of attorney; dishonesty in dealing with clients; fiscal dishonesty by obtaining payment from clients for services without providing them with an invoice; engaging in self-dealing; engaging in efforts to defraud the public by not concealing the actual cost |9of the elder care services; and, engaging in conduct that brings dishonor, or is detrimental, to the accounting profession.
After reviewing the documentary evidence, including the power of attorney to Mr. Thomas; the firm’s invoices and billing worksheets; the Hibernia Bank and Barksdale Federal Credit Union banks statements; and the correspondence between Mr. Thomas and the Sewells, and considering Mr. Thomas’ own testimony, we conclude the Board’s decision was not based solely on hearsay evidence. Mr. Thomas did not dispute the authenticity of the documentary evidence, and he readily acknowledged that he used the power of attorney to pay his firm $40,597.00 from monies obtained from Mrs. Sewell’s bank accounts, without her knowledge, for elder care services for which the Sewells never received an invoice.
“A reviewing court should not set aside an administrative agency’s decision to impose a particular sanction unless that decision can be characterized as arbitrary, capricious or an abuse of discretion.’ ” Rabb v. State Board of Certified Public Accountants of Louisiana, 04-0586, p. 2 (La.App. 4 Cir. 12/22/04), 893 So.2d 904, 907 (citations omitted). The Board’s decision was not arbitrary, capricious or an abuse of discretion.
Accordingly, the judgment of the district court, dismissing Mr. Thomas’ petition for judicial review of the Board’s November 29, 2007 order, is affirmed.
AFFIRMED.

.LSA-R.S. 49:964 G provides:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions:
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise or discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by firsthand observation demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.

. LSA-R.S. 49:950 et seq.

. Mr. Sewell died on July 21, 2004, at the age of 100. He suffered from dementia and was living in a nursing home at the time of his death. Mrs. Sewell, 90 years old and a native of Germany, resided in the United States for fifty years. In 2005, she moved back to Germany.

. In November 2003, Mr. Thomas's wife, Wil-lica, began performing elderly care services for the Sewells, which included driving them to and from medical appointments, the bank, the store and other places; setting up a medical alert system in their home; setting up cleaning services for their home; and repairing their garage. Mr. Thomas initially billed the Sewells $20.00 per hour for his wife's time, but later increased that amount to $30.00 per hour. He billed his own time at $100.00 to $150.00 per hour.

. Every check drawn on the Special Account, save the $40,597.00 check, was written and signed by Mrs. Sewell.

. Mr. Thomas appeared at the hearing and represented himself. Also, the Board had issued a subpoena to Mrs. Sewell, which was served on her attorney, but she was no longer living in the United States and, therefore, did not appear.

. As in effect at the lime of the offenses, LSA-R.S. 37:79, relative to enforcement against holders of professional accountant certificates and permits, provided, in part:
A. After notice and a hearing as provided for in R.S. 37:81, the board may revoke any certificate or permit, or suspend for a period of not more than five years, or refuse to issue or renew any certificate or permit, reprimand, censure, or limit the scope of practice of any licensee, impose an administrative fine not to exceed one thousand dollars per violation, or place any licensee on probation, all with or without terms, conditions, and limitations, for any one or more of the following reasons:
[[Image here]]
(4) Dishonesty, fraud, or gross negligence in the performance of services while holding a license or in the filing or failure to file the licensee’s own income tax returns.
[[Image here]]
(8) Conduct reflecting adversely upon the licensee's fitness to perform services while a licensee.
[[Image here]]
(11) Engaging in efforts to deceive or defraud the public.

. LAC § 46:XIX.1701.B(1), provides:
A licensee in the performance of professional services shall neither knowingly misrepresent facts nor subordinate his judgment to that of others. He shall be objective and shall not place his own financial interests nor the financial interests of a third party ahead of the legitimate financial interests of the client or the public in any context in which the client or the public can reasonably expect objectivity from one using the CPA title.

. LAC § 46:XIX.1707.A(2), provides:
Conduct reflecting adversely upon the licensee’s fitness to perform services, within the meaning of R.S. 37:79(A)(8), includes but is not limited to the following:
(2) Fiscal dishonesty of any kind.

. LAC § 46:XIX.1707.A(11), provides:
Conduct reflecting adversely upon the licensee’s fitness to perform services, within the meaning of R.S. 37:79(A)(8), includes but is not limited to the following:
(11) Conduct that brings dishonor, or is detrimental, to the profession.

. The Board also ordered that its findings be published in Lagniappe, the official newsletter of the Society of Louisiana CPAs, and forwarded to all State Boards of Accountancy and other appropriate public authorities and private organizations.

. LAC § 46:XIX.1909, relative to the administrative hearing, provides, in pertinent part, "[s]ubpoenas shall be issued upon request of the respondent, complaint counsel, or an investigating officer.”

. Acts 2006, No. 214, § 1 increased the administrative fine from $1,000.00 to $2,000.00. Although the misconduct and the filing of the complaint occurred prior to the change in the law, the administrative hearing was held after the change. Because the fine is an administrative sanction, the law in effect at the time of the hearing was applicable. However, the Board's written decision indicates that it applied the law in effect at the time of the offenses, thus limiting Mr. Thomas' administrative fines to $1,000.00 for each violation.