MAX N. TOBIAS, JR., Judge.
Lin this declaratory judgment action, T. Semmes Favrot (“Semmes”) appeals the trial court’s granting of summary judg *1192 ment in favor of his brother, James Favrot (“James”), as trustee of the H.M. Favrot, Jr. Trust # 3 (the “Trust”).[1] The judgment (1) assesses all attorney’s fees and costs incurred by the Trust in this litigation solely against Semmes’ beneficial interest in the Trust, and (2) authorizes the distribution of the Trust’s assets to the Trust beneficiaries, but more particularly, the distribution of Semmes’ beneficial interest in the Trust to him, thereby severing his interest in the Trust. Semmes also appeals the trial court’s dismissal of his motion to compel discovery as moot. For the reasons that follow, we affirm the trial court’s judgment in part, reverse in part, amend in part, and render a decision in this matter.
FACTS AND PROCEDURAL BACKGROUND
The Trust was established by Mr. Fav-rot and his wife, Kathleen Gibbons Favrot, in favor of their four children, Semmes, James, Kathleen, and Caroline, 12bestowing each child with a 25% beneficial interest therein.[2] James is the trustee of the Trust.[3] In March 2008, following his dismissal from the family business, Semmes filed an action to remove James as the trustee, alleging breaches of his fiduciary duties.[4] By way of a supplemental and amending petition, Semmes further sought damages against James for losses he purportedly sustained as a result of James’ alleged improper acts as trustee. Kathleen, Caroline, Mr. Favrot, and William Henry Shane, Jr. (“Shane”) intervened in the lawsuit for purposes of supporting James’ position that he had not violated any fiduciary duties owed, and also seeking to have him remain as trustee of the Trust.
During the course of the litigation, James filed a reconventional demand[5] requesting: (1) a declaratory judgment that *1193 would, in effect, partition the Trust assets equally among the four beneficiaries and remove James as the trustee over Sem-mes’ portion of the Trust’s assets, and (2) a judgment assessing the entirety of the Trust’s defense costs, including attorney’s fees, against Semmes’ beneficial | .¡interest in the Trust; Semmes was responsible for creating the expense to the Trust and it would be unfair to charge the other beneficiaries’ shares with that expense.
Prior to a bench trial in 2010, the parties stipulated that the sole issue to be tried was Semmes’ claim to remove James as trustee. All other claims, including Sem-mes’ claim for damages and the reconven-tional demand, were severed and reserved for another day. On 24 November 2010, the. trial judge rendered judgment with reasons in favor of James, finding that Semmes failed to prove that James breached any fiduciary duty he may have owed as trustee. Additionally, although the issue was not before the trial court per the pre-trial stipulation of the parties, the judgment granted the requested declaratory relief declaring that the trustee was authorized by law and under the Trust to (1) charge all of the fees and costs incurred in the litigation against Semmes’ beneficial interest in the Trust, and (2) “distribute the Trust assets to the beneficiaries, including distribution of all of the assets of the Trust so as to in effect severe the beneficiaries’ joint interests as Trust beneficiaries.” Semmes appealed the entire judgment to this court.
On appeal, we affirmed the trial court’s dismissal of Semmes’ petition to remove James, as trustee but, finding the trial court was bound by the pre-trial stipulations of the parties, vacated its granting of declaratory relief, and remanded the matter to the trial court for further proceedings.[6] See Favrot v. Favrot, 11-0495, unpub. (La.App. 4 Cir. 11/16/11), 2011 WL 9160400. Following remand, James filed a motion for summary judgment on the re-conventional demand seeking the above-mentioned declaratory relief. Semmes opposed the motion, and filed a motion to compel discovery that sought to further substantiate his opposition.
Both James’ motion for summary judgment and Semmes’ motion to compel came for hearing on 24 August 2012. Finding no material facts to be in dispute and that James was entitled to the declaratory relief sought as a matter of law, the trial court rendered judgment on 6 September 2012, granting James’ motion for summary judgment and declaring as moot Semmes’ motion to compel discovery.
It is from this judgment that Semmes timely appealed.
STANDARD OF REVIEW
A trial court has broad discretion in handling discovery matters and an appellate court should not upset a ruling absent an abuse of discretion. Sercovich v. Sercovich, p. 5 (La.App. 4 Cir. 6/13/12), 96 So.3d 600, 603. Under this abuse of discretion standard of review, “[a]n appellate court must balance the information sought in light of the factual issues involved and the hardships that would be caused by the court’s order when determining whether the trial court erred in ruling on a discovery order.” Id., citing Wollerson v. Wollerson, 29,183, p. 2 (La.App. 2 Cir. 1/22/97), 687 So.2d 663, 665.
*1194 An appellate court reviews summary judgments de novo using the same criteria that governs a trial court’s consideration of whether summary judgment is Inappropriate. John C. Bose Consulting Engineer, LLC v. John T. Campo & Associates, Inc., 07-1001, p. 2 (La.App. 4 Cir. 2/20/08), 978 So.2d 1033, 1034.
DISCUSSION

Motion to Compel Additional Discovery

In his first assignment of error, Semmes argues that the trial court erred by granting James’ motion for summary judgment because the court failed to permit adequate discovery relating to the distribution of the Trust’s assets. Specifically, Sem-mes contends that, in dismissing his motion to compel as moot, the trial court denied him access to facts relating to the distribution of all of the Trust’s assets that were essential to his being able to justify his opposition to the motion for summary judgment. Consequently, he claims that he was not afforded the opportunity to discover pertinent information to fully present his opposition; he claims the trial court deprived him of the ability to prove the potential adverse effects that termination of the Trust by distribution of all of the assets would have upon the best interests of all of the beneficiaries, including himself. In particular, Semmes avers that he lacked possession of all loan agreements and/or other loan documentation relating to the Trust and its assets, which he claims might have shown that distribution of the Trust’s assets could adversely impact the beneficiaries’ relationships with lenders, possibly resulting in defaults under loan agreements and/or other credit facilities. Additionally, he contends the requested documentation could establish that distribution of the Trust’s assets might result in all beneficiaries (including himself) having to personally guarantee loans in the future. (The Trust currently guarantees the loans.)
La. C.C.P. art. 1422 states, in part, that “[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.” La. C.E. art. 401 defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probably than it would be without the evidence.” The discoverability test under La. C.C.P. art. 1422 entails first asking whether answering the discovery is feasible and practicable. If that answer is in the affirmative, then the court determines whether an answer to the discovery would “expedite the litigation by either narrowing the area of controversy or avoiding unnecessary testimony or providing a lead to evidence.” Industrial Pipe, Inc. v. Plaquemines Parish Council, 12-1348, pp. 7-8 (La.App. 4 Cir. 9/14/12), 100 So.3d 896, 900.
In the case sub judice, the parties had previously participated in a week-long trial on Semmes’ petition for removal of James as trustee, prior to which the loan agreements and/or other relevant loan documentation regarding the Trust and its assets were made available to Semmes for his review and copying. The record indicates that Semmes also received detailed monthly accountings for all of the Trust’s activities with supporting and explanatory documentation. Moreover, the instant motion for summary judgment was filed on 16 December 2011, and the matter was not heard by the trial court until 24 August 2012. Semmes chose not to avail himself of the opportunity to review the requested documentation for the more than eight- *1195 month period that it was made available to him.
La. C.C.P. art. 1460 provides that a party upon whom discovery is propounded has the right to respond to the discovery by making available the relevant records available in such form as they are kept in the normal course of 17business. The record reflects that this is how the information was made available to Semmes. Semmes was provided with an itemized inventory of the files segregated by box. Having worked as an executive at Favrot & Shane where the records were located for more than a year, Semmes was personally familiar with the company’s filing system and how the files were maintained, providing him with the necessary experience to personally locate the specific information he claims he wanted. Accordingly, we find the trial court did not abuse its discretion in determining that it could consider and rule on James’ motion for summary judgment without granting Semmes’ motion to compel. Semmes had ample experience and opportunity to review the requested documentation and prepare his defense prior to the hearing on the motion for summary judgment.
This assignment of error is without merit.

Assessment of Attorney’s Fees and Costs

In his second assignment of error, Sem-mes avers the trial court erred in assessing all of the legal expenses incurred by the Trust associated with this litigation, including attorney’s fees, solely against his beneficial interest in the Trust assets. We find this assignment to have merit, in part, specifically as it pertains to the assessment of attorney’s fees.
We are mindful of the well-settled rule in Louisiana that attorney’s fees are not generally assessable in the absence of specific statutory authority or unless expressly authorized by contract. Paz v. BG Real Estate Services, Inc., 05-0115, pp. 2-3 (La.App. 4 Cir. 12/14/05), 921 So.2d 186, 188. The terms of the Trust do not specifically provide for an assessment of attorney’s fees against a single beneficiary’s interest. Therefore, unless a pertinent law provides for such an |Rassessment, attorney’s fees are not allocable solely against Semmes’ interest in the Trust.
In the trial court’s reasons for the 24 November 2010 judgment, wherein declaratory relief was granted allocating all of the litigation fees and expenses incurred by the Trust solely against Semmes’s beneficial interest,[7] the trial court reasoned that such an allocation was specifically contemplated and endorsed by La. R.S. 9:2141 D, which provides that “[a] trust shall be administered with due regard to the respective interests of the beneficiaries in the allocation of receipts and expenditures.” We find the trial court’s reliance on La. R.S. 9:2141 as authority for allocating attorney’s fees solely to Semmes’ beneficial interest is misplaced and inapplicable to the resolution of this issue. La R.S. 9:2141, entitled “General rule,” is the first statute contained in subpart D, “Allocation to Income and Principal,” of the Louisiana Trust Code. A review of the statutes following the general rule, ie., La. R.S. *1196 9:2142-9:2157, indicates that the allocation of receipts and expenditures referenced in La. R.S. 9:2141 is only to be an allocation between income and principal, not an allocation among beneficiaries. Therefore, this provision concerns the allocation of expenditures, such as the litigation expenses at issue, between income and principal, not the allocation of those expenditures to a particular beneficiary as the trial court did in this case.
The trial court also erroneously relied upon La. R.S. 9:2193 and 9:2191 to support its allocation of attorney’s fees solely to Semmes’ beneficial interest in the Trust. Section 2193 states that the trustee is authorized to defend actions against [flthe trust, and section 2191 bestows upon the trustee the right to be indemnified from trust property for all properly incurred expenses. While these provisions authorize the trustee to (1) defend the Trust in these proceedings, (2) incur litigation expenses, including attorney’s fees, and (3) pay or be reimbursed for those expenses from the entire Trust estate, they do not authorize James to allocate attorney’s fees against a single beneficiary’s interest in the Trust. Thus, to the extent that James is entitled to indemnification for attorney’s fees incurred by the Trust pursuant to La. R.S. 9:2191 and 9:2193, such must come from the entire Trust estate, assessed pro-rata against each of the four beneficiaries’ interests therein.
In the trial court and now on appeal, James relies on two Louisiana cases to support his contention that attorney’s fees were properly assessed solely against Semmes’ beneficial interest: In Re Succession of Horrell, 07-1533 (La.App. 4 Cir. 10/01/08), 993 So.2d 354, and Succession of Bell, 06-1710 (La.App. 1 Cir. 6/08/07), 964 So.2d 1067. We find the cases to be inap-posite. In both Horrell[8] |inand Bell,[9] the *1197 assessment of attorney’s fees made against a legatee’s share of an estate was ordered by the court because each legatee had been held in contempt for violating a court order and sanctioned accordingly. Moreover, in Bell, while the contempt ruling and imposition of attorney’s fees were reversed on appeal on procedural grounds, the legatee was required only to pay the expenses, not attorney’s fees, that her actions actually cost the estate.
We find the case of In re Mashburn Marital Trusts, 10-0278 (La.App. 1 Cir. 12/22/10), 52 So.3d 1136, to be instructive on the attorney’s fee issue. In Mashbum, two of the nine beneficiaries instituted extensive litigation against the co-trustees of a family trust and a marital trust.[10] Once the decisions in the varying suits became final, the co-trustees of the family trust and the managing co-trustees of the marital trust contended that, because the two beneficiaries had litigated for their own individual benefit rather than for the benefit of all of the beneficiaries of the trusts, the litigation expenses incurred by the co-trustees of the trusts should be allocated on a pro-rata basis to the individual trusts of the two beneficiaries who instigated the proceedings. Specifically, the co-trustees argued that to allocate the | n expenses equally among all of the trust beneficiaries would be “unfair, unreasonable, and without due regard to the interests of the other seven beneficiaries of the trust.” See Id., p. 11, 52 So.3d at 1143. The First Circuit disagreed. Though the court conceded that the two beneficiaries had litigated for their own personal benefit, rather than for the benefit of all of the trusts or beneficiaries, the court determined that it was improper to allocate the litigation expenses solely against the two beneficiaries’ shares of the trusts when the co-trustees had both maintained and defended the various actions on behalf of and in order to protect all beneficiaries. Accordingly, the court held that the litigation expenses incurred by the co-trustees of both trusts should be assessed pro-rata from the income (and if necessary from the principal) of all of the beneficiaries. Id, p. 14, 52 So.3d at 1145.
The Mashbum court, in dicta, recognized the possibility that “[i]f a trust beneficiary instigates an unfounded or frivolous proceeding against the trust or trustee in bad faith, the trial court may have the power to charge the reasonable and necessary fees incurred by the trustee in opposing the proceeding against that beneficiary’s share of the trust estate.” Id, p. 14 n. 6, 52 So.3d at 1145. Furthermore, the court noted that, although attorney’s fees are not allowed as an item of damages or costs except where authorized by statute or contract, abuse of process has been recognized as an exception to that rule. Id.
In the case before us, while James suggests that the trial court “obviously” found Semmes’ claims to be “frivolous,” nowhere in the judgment or the trial court’s previously written reasons for judgment did the court make such a | ^determination. Additionally, the reconventional demand filed by James seeking declaratory relief neither makes an allegation of frivolity *1198 against Semmes’ nor does it state a claim for abuse of process or otherwise seek sanctions. We do not find the trial court’s determination that Semmes’ claims “were without merit” synonymous or equivalent to a finding that his claims were frivolous, unfounded, and brought in bad faith. Moreover, our review of the record satisfies us that a reasonable person could find that Semmes, although perhaps litigating for his own personal benefit, was not acting frivolously or in bad faith.[11]
The Trust does not provide for a single beneficiary to be charged with the payment of attorney’s fees. No applicable statutory authority supporting the imposition of attorney’s fees exists in this case. Additionally, James’ reconventional demand is devoid of any request for sanctions and/or a claim for an abuse of process, and contains no allegations of frivolity or bad faith against Semmes. Consequently, we find the trial court erred in granting summary judgment insofar as it assessed the entirety of the attorney’s fees incurred by the Trust solely against Semmes’ beneficial interest. Accordingly, we hold that the attorney’s fees incurred by the Trust in this matter should be assessed equally among all four beneficiaries.
Regarding the trial court’s allocation of costs against Semmes’ portion of the Trust, La. C.C.P. art.1920 provides that “[ejxcept as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party as it may consider equitable.” [Emphasis supplied.] In the instant case, the actual parties to this litigation against whom the judgment for costs can be cast pursuant 11sto La. C.C.P. art.1920, are Semmes, in his individual capacity and not his “beneficial interest in the Trust,” and James, in his capacity as trustee of the Trust. In contrast to the claims made within the succession proceedings in Horrell and Bell, supra, the instant suit does not involve an internal dispute within the Trust, but rather, consists of a suit by Semmes, individually, against the trustee of the Trust seeking his removal. Therefore, while the literal application of La. C.C.P. art.1920 authorizes the court to assess costs against Semmes, individually, it does not allow the court to allocate costs to be paid solely out of his beneficial interest in the Trust. Accordingly, we amend the judgment and hold that all costs, exclusive of attorney’s fees, incurred by the Trust in these proceedings be assessed against Semmes, individually.

Distribution of the Trust’s Assets to the Beneficiaries

In his last assignment of error, Semmes avers the trial court abused its discretion when it granted summary judgment in favor of James authorizing him, as trustee, to distribute the Trust assets to all beneficiaries. Semmes argues that neither the Trust instrument nor Louisiana law allows for the Trust to be terminated prior to its term by a distribution of all of the Trust assets. He contends that, pursuant to Article 2.3 of the Trust instrument, termination of the Trust is prohibited before the death of both settlors, and because this provision is “clear and explicit and do[es] not lead to absurd consequences, no further interpretation may be made in search of the parties’ intent.” See La. C.C. art.2046. We disagree.
Article 3.1 of the Trust[12] authorizes the trustee to distribute to a beneficiary “so *1199 much of the accumulated income, principal or both 114at such time and in such amounts as the trustee determines in the Trustee’s sole discretion.” Despite Sem-mes’ argument to the contrary, we find no provision in the Trust or in Louisiana law that prohibits the trustee from distributing to Semmes the entirety of his portion of the Trust’s assets, in effect, severing the Trust, but not terminating it. The only restriction contained in Article 3.1 is that the distribution to a beneficiary “shall not exceed [that beneficiary’s] share.”
In its 24 November 2010 reasons for judgment initially granting the declaratory relief sought by James, the trial court stated:
Concerning the distribution of Trust assets, the Court observes the following. Given the ill feelings between James and Semmes, and to perhaps a different degree, the ill feelings between Semmes and his sisters, it would seem to be in the best interest of all of them that their respective interests in the Trust be severed. James, Kathleen, and Caroline have petitioned that the Court render a declaratory judgment that James, as Trustee, is entitled under the Trust instrument to distribute the assets among the four beneficiaries in order to effectuate a separation of their interests from one another....
The Court finds that under the clear language of Article 3.1, the Trustee may pay to each beneficiary “the accumulated income, principal, or both at such time and in such amounts as the Trustee determines in the Trustee’s sole discretion.” Hence, the Court finds that James, as Trustee, is entitled to proceed in the manner requested in the Recon-ventional Demand filed by James and the Intervenors.
| ir,Finding no genuine issue of material fact, no abuse of discretion on the part of the trial court, and being in agreement with its reasoning, we affirm the trial court’s granting of summary judgment in favor of James concluding that, as a matter of law, the trustee is entitled to distribute to Semmes his share of the Trust’s assets.

CONCLUSION

For the foregoing reasons, we affirm the trial court’s granting of summary judgment in favor of James authorizing him, as trustee, to distribute to Semmes the entirety of his share of the Trust assets. We reverse that portion of the trial court’s granting of summary judgment in favor of James assessing all attorney’s fees incurred by the Trust solely against Sem-mes’ beneficial interest in the Trust and hold that the attorney’s fees are to be allocated equally among the interests of all four beneficiaries. We amend that portion of the trial court’s granting of summary judgment in favor of James assessing all costs incurred by the Trust in these proceedings against Semmes’ beneficial interest and order that said costs, exclusive of attorney’s fees, be assessed against Sem-mes, individually. Lastly, we affirm the trial court’s dismissal of Semmes’ motion to compel discovery as moot.

AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; RENDERED.

*1200 (Court composed of Judge MAX N. TOBIAS, JR., Judge ROSEMARY LEDET, Judge SANDRA CABRINA JENKINS).

. Semmes' sisters, Kathleen Favrot Van Horn ("Kathleen”) and Caroline Favrot Trube ("Caroline”), and his father, H.M. Favrot, Jr. ("Mr. Favrot”) intervened in the suit on James’ side. See La. C.C.P. art. 1091.

. The Trust consists of ownership interests, direct and indirect, in Favrot & Shane real estate projects. It is averred that the Trust has never held interest in the "operating companies” for the real estate projects, but the record furnishes us with no information about the operating companies or their identities.

. James is also "president” of Favrot & Shane, where he has been employed for more than 20 years; however, the precise entity of which he is president is not specifically divulged in the record before us.

. Semmes, an attorney-at-law, resigned from the law firm of Adams & Reese where he practiced until 2004 and joined Favrot & Shane. Upon doing so, Mr. Favrot, James, and Semmes entered into an agreement that outlined the terms of employment of each son. Once employed, over James' objection, Semmes convinced Mr. Favrot to renegotiate the agreement, which was thereafter amended to reflect an increase in Semmes’ personal interest in the company's new real estate projects. In 2005, Semmes’ employment with the company was terminated and, following his departure, a new agreement was created.

.The record on appeal does not contain a copy of the reconventional demand seeking the declaratory relief that is the subject of this appeal. We are, however, able to glean the gravamen of the demand from exhibit "A” attached to James' motion for leave to file an amended reconventional demand for declaratory judgment, which exhibit consists of a draft of an amended reconventional demand for declaratory relief.
Additionally, although Kathleen, Caroline, and Mr. Favrot joined in the reconvention, it is not clear that they have a cause of action per se to do so. See La. C.C.P. arts. 1061 and 1091. That is, by virtue of article 1091, an intervenor siding with the position of the defendant does not appear to be able to assert a reconventional demand pursuant to article 1061 against the plaintiff. Nevertheless, such is not relevant in this case and is not assigned as an error on appeal.

. Specifically, we stated:
Even though the trial court may have had the necessary evidence to rule on the recon-ventional demand, it was clearly outside the issue being tried. The trial court was bound by the stipulations entered into by the parties.
Favrot v. Favrot, 11-0495, pp. 4-5, unpub. (La.App. 4 Cir. 11/16/11), 2011 WL 9160400.

. The declaratory relief granted by the judgment in James’ favor, as trustee, was vacated by this court in Favrot, supra, 2011 WL 9160400, on the grounds that the reconven-tional demand was outside the scope of the issue then being tried (i.e., Semmes’s action to remove James as trustee). While the trial court did not issue separate reasons for judgments upon rendition of the 6 September 2012 judgment, granting James’ motion for summary judgment relating to the reconvention seeking declaratory relief, the language in both judgments is identical.

. In Horrell, the provisional administrator of the succession moved for sanctions against Mr. Horrell, a legatee, pursuant to La. C.C.P. art. 863. She also sought an interim payment of $147,628.82 for legal services rendered and costs advanced on behalf of the succession under La. C.C.P. art. 3351, which provides for compensation and authorizes interim payments to the succession administrator. Horrell, 07-1533, pp. 16-17, 993 So.2d at 367. Following a show-cause hearing, the trial court held Mr. Horrell in contempt for failing to comply with the court’s order to allow the provisional administrator, the notary, and the appraisers entry to his residence. Id. at p. 19, 993 So.2d at 368. As a sanction, Mr. Horrell was ordered to pay $81,781.44 of the provisional administrator's total costs and fees, including attorney's fees, solely out of his share of the succession assets. On appeal, this court found no error in the trial court’s ruling holding Mr. Horrell in contempt. Further, we affirmed the trial court's "considerable discretion” regarding its imposition of sanctions ordering Mr. Horrell to pay the provisional administrator’s costs and fees finding that the record demonstrated that his actions were the cause of considerable delay and expense in the litigation and the amount charged against his share of the succession represented what his actions actually cost the estate. Id. at pp. 18-19, 993 So.2d at 36.

. In Bell, a legatee was held in contempt for violating the previous orders of the court and, consequently, was ordered to pay $1,000 in attorney's fees for the contempt and all costs of the proceedings. Succession of Bell, 06-1710, p. 4, 964 So.2d at 1070. The trial court also held the legatee in contempt for violating the court’s previous orders to provide the administratrix with a key to the decedent’s residence, to pay the impound fees for the decedent’s car, to turn over all of the decedent’s furniture and personal effects, and to cooperate with the administratrix's efforts to sell the residence. As a consequence, the trial court ordered the legatee to reimburse the estate for the amounts the administratrix expended to redeem the damaged vehicle and to change the keys on the residence. On appeal, the court reversed the trial court's contempt ruling and the imposition of attorney’s fee, finding that the record showed the adminis-tratrix failed to follow the proper statutory procedures, that required her to formally request a finding of contempt for the legatee’s refusal to obey the orders of the court and to *1197 set forth same in a rule to show cause. Further, the appellate court, finding no abuse of discretion, affirmed the trial court’s order for the legatee to pay the actual expenses incurred by the administratrix on the basis that "they were simply reimbursements of amounts” that the legatee’s "actions had cost the estate.”

. The two authentic acts creating the family trust and the marital trust established nine separate trusts, one for the sole benefit of each of Jack and Sadie Mashbum’s nine children, who were the income and principal beneficiaries of their respective trusts. The trusts were managed and administered by a set of co-trustees.

. This is not, however, to say that further action by Semmes may not ultimately cross the line into the realm of frivolity and/or bad faith.

. Article 3.1 states:
3.1 Distribution of Income and Principal. The Trustee may distribute to, apply or accumulate for a beneficiary the net income *1199 of the trust in such amounts and at such time as the Trustee determines in the Trustee’s sole discretion. The Trustee may pay to or apply for a beneficiaiy’s benefit so much of the accumulated income, principal or both at such time and in such amounts as the Trustee determines in the Trustee’s sole discretion. Any distribution to a beneficiary shall be charged to the beneficiary’s share of the trust and shall not exceed such share.