PAUL A. BONIN, Judge.
_JjThe State Board of Certified Public Accountants of Louisiana revoked the CPA license of John W. Davis, imposed an administrative fine of $55,000, and ordered the payment of the Board’s “costs,” including attorney fees totaling $105,679.85. Mr. Davis timely appealed the Board’s decision to the Civil District Court for the Parish of Orleans. After reviewing the record of the administrative proceedings, the district court affirmed the revocation of Mr. Davis’ license and the imposition of the fine, but reversed the Board’s order requiring Mr. Davis to pay the Board’s attorney fees incurred as a result of the adjudication proceedings. From the ruling of the district court, Mr. Davis only appeals the revocation of his license.[1] The Board, seeking reinstatement of the attorney fees, appeals that aspect of the district court’s ruling.
After de novo review of the entire record and based upon our own determination by a preponderance of the evidence, we find that the Board’s conclusions that Mr. Davis engaged in fraud and unprofessional conduct are sustainable and support its adjudication revoking Mr. Davis’ CPA license. With Lrespect to the Board’s appeal of the district court’s ruling, we have also conducted a de novo review of this matter, and conclude that the district court was legally correct in reversing the Board’s order that Mr. Davis pay its attorney fees. Thus, we affirm the district court’s ruling. We explain our decision in greater detail below.
I
Because this matter involves the judicial review of a state agency’s adjudication, we begin by describing the Board and its authority pertinent to the matters under review, and then consider the special procedures provided by law for judicial review of an adjudication of an administrative agency.
A
The State Board of Certified Public Accountants of Louisiana is a state agency *394 within the office of the governor. See La. R.S. 37:74 A. The Board consists of seven members, all licensed, appointed by the governor, and confirmed by the Senate. See La. R.S. 37:74 B(l), C(l). The Board takes appropriate administrative actions to regulate holders of a certificate and permits, and to enforce the provisions of the Louisiana Accountancy Act. See La. R.S. 37:74 E(5); La. R.S. 37:71. One of the purposes of the Louisiana Accountancy Act is to ensure the public that certified public accountants will maintain certain professional standards or forfeit the privilege to represent themselves as such. See La. R.S. 37:72.
^Importantly, the Board is authorized to adopt rules in accordance with the Administrative Procedure Act governing the administration and enforcement of the Louisiana Accountancy Act as well as “the conduct of holders of a certificate and permits.” La. R.S. 37:74 J. Thus, the Board may adopt rules “controlling the quality and probity of services ... including but not limited to those dealing with independence, integrity, and objectivity, competence and technical standards, responsibilities to the public, and responsibilities to clients.” La. R.S. 37:74 J(4) (emphasis added).
The Board is also specially authorized, after notice and a hearing, to revoke a certificate because of a holder’s violation of professional standards or rules of professional conduct adopted by the Board, performance of any fraudulent act, conduct reflecting adversely upon his fitness to perform services as a CPA, engaging in efforts to deceive or defraud the public, professional incompetency, or rendering, submitting, or verifying false, deceptive, misleading, or unfounded reports. See La. R.S. 37:79 A(5), (7)-(8), (11)-(13).
Once a license is issued to a certified public accountant, it may not be revoked without affording to the licensee the procedural due process required by the Fourteenth Amendment as such state action adjudicates important interests of the licensees. See Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The nature of the process that is required, however, varies depending on the individual deprivation. See id. at 540, 91 S.Ct. 1586; Wilson v. City of New Orleans, 479 So.2d 891, 895 (La.1985). In order to revoke a license of a certified public accountant, the Board must hold a Lhearing. The Board’s administrative hearings, however, are not “bound by technical rules of evidence.” La. R.S. 37:81 F. But, the Board’s decision in a given case may not rest entirely on hearsay evidence. See Thomas v. State Bd. of Certified Pub. Accountants, 08-1491, pp. 8-9 (La.App. 4 Cir. 1/27/10), 30 So.3d 1102, 1108.
The Board may impose a penalty on evidence of the commission of a single act prohibited by the Louisiana Accountancy Act without the necessity of establishing a general course of conduct. See La. R.S. 37:85. The Board may also impose an administrative fine not to exceed two thousand dollars per violation. See La. R.S. 37:79 A. Additionally, at the time of this adjudication, the Board could require the licensee to pay the “costs of any proceedings” involved in the adjudication. See La. R.S. 37:79 B(3). Thus, the Board has the legal authority to revoke a CPA certificate as well as impose fines and costs upon the certificate holder.
Any person who is adversely affected by the Board’s adjudication may file a written petition for review of the adjudication in the Civil District Court for the Parish of Orleans. See La. Const. art. 5, § 16(B) (“A district court shall have appellate jurisdiction as provided by law.”); La. R.S. 37:81 J. “The procedures for review and scope of review shall be as specified in the *395 judicial review of adjudication procedures of the Administrative Procedure Act.” Ibid. We therefore turn to the Administrative Procedure Act.
[[Image here]]
Generally, “a person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review” under the Administrative Procedure Act. La. R.S. 49:964 A(l); La. R.S. 49:950. Proceedings are instituted in the appropriate district court by the filing of a petition for judicial review. See La. R.S. 49:964 B. “The review shall be conducted by the court without a jury and shall be confined to the record” from the agency adjudication. La. R.S. 49:964 F.[2] The court, upon request, shall also hear oral argument and receive written briefs. See ibid.
A reviewing court may affirm the decision of the agency or remand the case for further proceedings. See La. R.S. 49:964 G. A reviewing court may reverse or modify an agency’s findings, inferences, conclusions, or decisions “if substantial rights of the appellant have been prejudiced” because the agency’s findings, inferences, conclusions, or decisions are “[n]ot supported and sustainable by a preponderance of evidence as determined by the reviewing court.” La. R.S. 49:964 G(6) (emphasis added). “In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of the evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review.” Ibid. (emphasis added). But also, “[i]n the application of this rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of the demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.” Ibid, (emphasis added). We also give deference to agency determinations of questions of law and mixed questions of law and fact which the agency has been charged to answer as well as the judgments of agencies upon the professional behavior of a member of the profession which the agency is charged to oversee.
A reviewing court may also reverse or modify an adjudication if the agency’s holding was “arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.” La. R.S. 49:964 G(5). A reviewing court should not intervene unless the administrative agencies’ conduct is clearly unreasonable and arbitrary. See Bourgeois v. Louisiana State Racing Comm’n, 10-0573, p. 6 (La.App. 4 Cir. 11/12/10), 51 So.3d 851, 856. This provision applies to our review of final questions of law and mixed questions of law and fact, which the Board has been charged to answer. See Carpenter v. State, Dept. of Health and Hospitals, 05-1904, p. 5 (La.App. 1 Cir. 9/20/06), 944 So.2d 604, 608. See, e.g., Clark v. Louisiana State Racing Comm’n, 12-1049, p. 10 (La.App. 4 Cir. 12/12/12), 104 So.3d 820, 827. This deference is granted to an administrative agency due to its heightened expertise in the matters that the agency reviews.
Finally, a reviewing court may reverse or modify the agency’s findings, inferences, conclusions, or decisions “if substantial rights of the appellant have been prejudiced” because the agency’s findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions, (2) in excess |7of the statutory authority of the agency, (3) made upon *396 unlawful procedure, or (4) affected by other error of law. See La. R.S. 49:964 G(l)-(4). These grounds present questions of law, and are reviewed de novo — without any deference to the agency or the district court as the first court of review. See Carpenter, 05-1904 at p. 5, 944 So.2d at 608.
“An aggrieved party may obtain review of any final judgment of the district court by appeal to the appropriate circuit court of appeal. The appeal shall be taken as in other civil cases.” La. R.S. 49:965. We have appellate jurisdiction over this matter. See La. Const, art. 5, § 10 A. The scope of our appellate review is defined by the same sections of the Administrative Procedure Act as those for the district court, the first court of appellate review. See La Const, art. 5, § 10(B); La. R.S. 49:964 G.
II
On September 9, 2011, the Board rendered its Final Decision following an administrative hearing, issuing one hundred two Findings of Fact and fifty-seven Conclusions of Law including violations of La. R.S. 37:79, La. R.S. 37:83, and Chapter XIX of Section 46 of the Louisiana Administrative Code.[3] After our independent and, for the most part, non-deferential evaluation of the entire record of these administrative proceedings, we conclude that the Board’s Findings of Fact |sare sustainable and supported by a preponderance of the evidence, and uphold the Board’s revocation of Mr. Davis’ license. We find the following.
A
Mr. Davis was a holder of a certifícate as a certified public accountant in Louisiana since January 27, 1984.[4] See La. R.S. 37:73(3). In 1990, Mr. Davis began to provide accounting and tax preparation services for the Magee family and its pharmacy business, Family Health Centers, Inc. In 2003, however, the nature of their business relationship changed when Mr. Magee decided to open multiple new drugstores and partner in this venture with Mr. Davis and Mr. Tinnerello, a pharmacist at one of Mr. Magee’s businesses. Mr. Davis received ownership or equity interests in these newly-forming entities including Albany Pharmacy, L.L.C., Dutchtown Pharmacy, L.L.C, and several others in exchange for his professional “in-house” accounting services. These services varied from forming the businesses themselves to bookkeeping, maintaining the check book and general ledger, and preparing financial statements as well as sales and income tax returns. Mr. Davis also prepared the personal income tax returns of the Tinnerello and Magee families.
All proceeded in a seemingly proper manner until 2007 when Mr. Magee engaged an outside CPA to provide fair market valuations of his various business entities. Upon reviewing those entities’ financial records, that CPA terminated the engagement, citing material differences between the amounts of income, expenses, assets, and liabilities in compiled financial *397 statements and income tax returns for the same time periods.
19Mr. Davis asserts that the Board erred in finding that the financial information provided by Mr. Davis to that outside CPA could not be relied upon for the purposes of performing a business valuation, and that those documents were not prepared in accordance with Mr. Davis’ professional obligations. Mr. Davis claims that the outside CPA never testified as to either conclusion. Whether that outside CPA testified about these matters, however, is unimportant as those conclusions are the types of decisions specifically entrusted to the Board. The Board’s conclusion as to whether Mr. Davis deviated from his professional obligations, and provided data that falls below the minimum standards required of a practitioner of public accounting are at the essence of the Board’s specialty and competence. In our review of such administrative actions, we are cognizant of the “strong presumption of validity and propriety in such administrative actions where casting judgment upon the professional behavior of a fellow member of a profession is a matter peculiarly within the expertise of an agency composed of members of that profession.” Armstrong v. Louisiana State Bd. of Medical Examiners, 03-1241, p. 11 (La.App. 4 Cir. 2/18/04), 868 So.2d 830, 838 (quoting Montalbano v. Louisiana State Bd. of Med. Examiners, 560 So.2d 1009, 1011 (La.App. 4th Cir.1990)). Thus, in our review of this matter under La. R.S. 49:964 G(5), we find that the Board’s determination was reasonable and affirm its holding.
After the outside CPA explained his reasons for terminating the engagement to Mr. Magee, Mr. Davis was terminated. A subsequent review of the income tax returns filed by Mr. Davis for the 2003-2006 years resulted in the filing of multiple h (¡amended tax returns along with substantial additional payments to the Internal Revenue Service and the Louisiana Department of Revenue.[5]
B
Mr. Davis also systematically and consistently underreported monthly sales figures in his preparation of the businesses’ sales and use tax reports for the appropriate taxing authorities. His reports caused the entities to pay significantly less than the proper amount of sales tax, and disregarded each entity’s point-of-sale computers, which aggregated this data to accurately calculate the tax due. From December 2004 to March 2007, Albany alone underreported sales in excess of $4 million dollars.
The resulting liability from this scheme was eventually realized. The Ascension Parish Sales & Use Tax Authority audited Dutchtown, and assessed $129,330.38 in interest and penalties for the failure to remit sales tax and $267,491.23 in sales tax that was collected but not remitted. Also, the Livingston Parish School Board audited Albany, which subsequently reached a settlement agreement to pay $330,312.74 in unpaid sales tax and $110,713.12 in interest.
A review of the companies’ financial records also revealed that Mr. Davis was *398 using Albany’s collected, but not remitted, sales tax funds for his own personal benefit without the authorization of Mr. Magee and Mr. Tinnerello, and that Mr. Davis misrepresented how those funds were used in the company’s records. Prior to his termination, Mr. Davis ordered Linda Gomez, a CPA ^employed by Mr. Davis, to issue numerous blank checks drawn on Albany’s account. The checks were either deposited into the Treasury Tax and Loan Account of Mr. Davis’ CPA firm, paid to Mr. Davis’ sister, or used for an appeal bond on behalf of Mr. Davis. These funds were not applied to any of Albany’s expenses or liabilities. At the direction of Mr. Davis, Ms. Gomez also improperly coded the entries into the general ledgers noting the withdrawal of the funds to indicate different uses for those funds.
Mr. Davis challenges these findings arguing that, as a member of that limited liability company, he was entitled to distributions. These checks were entered into evidence at the hearing. Mr. Davis does not contest the validity of the checks. Further, Mr. Davis does not contest that these withdrawals were misrepresented in the corporate books as sales tax payments. Finally, we find that Mr. Davis’ use of these funds was unauthorized. Mere membership in a limited liability company does not entitle that member to unilateral use of the funds of that entity.
D
Mr. Davis also improperly structured the ownership of Albany and Dutchtown through entities wholly-owned by Roth IRAs. Mr. Davis personally formed some of these entities, and arranged for the Roth IRAs to be set up through the Stanford Group. The use of Roth IRAs in this manner is considered by the IRS to be an “abusive tax shelter.” Mr. Davis did not inform his business partners that these positions were risky or aggressive, subjecting them to the possibility of adverse action by the IRS. Prior to forming these entities, Mr. Davis did solicit a |12draft opinion from a tax attorney, which was read by Mr. Magee but not Mr. Tinnerello. Neither partner spoke with that attorney or any other accountant regarding the matter. Both partners relied entirely on Mr. Davis’ advice and recommendations regarding the use of Roth IRAs in this manner.
Mr. Davis asserts that Mr. Magee’s review of the draft opinion from the tax attorney undermines the Board’s factual findings that Mr. Magee and Mr. Tinnerel-lo relied entirely on Mr. Davis’ advice and recommendations, and that Mr. Davis failed to inform Mr. Magee and Mr. Tin-nerello of the risky and aggressive nature of this course of action. The Board weighed the credibility of numerous testifying witnesses, including Mr. Magee, Mr. Tinnerello, the outside tax attorney, and a defense expert, in making this determination. We give due regard to those credibility determinations. See La. R.S. 49:964 G(6).
E
Mr. Davis also committed numerous other violations during this time period. First, his firm issued multiple Compilation Reports after his firm’s registration with the Board had lapsed. Second, Mr. Davis did not note that he was not independent of the entities for which he had prepared Compilation Reports as required by the Statement on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants. Finally, Mr. Davis also forged a signature on a tax return, and, as a notary, improperly executed several documents filed with the Secretary of State of Louisi *399 ana related to the entities formed by Mr. Davis.
Mr. Davis, again, challenged the Board’s credibility determination regarding a witness to this accusation of forgery. This witness’ testimony was supported by experts testifying on behalf of both Mr. Davis and the Board. Both stated that the 113signature was that of the person in question. We give due regard to this determination as well. See La. R.S. 49:964 G(6).
After our review of the entire record, we conclude that the Board’s findings in this matter are supported and sustainable by a preponderance of the evidence. We affirm the Board’s revocation of Mr. Davis’ CPA license.
Ill
We turn now to the Board’s appeal of the district court’s ruling. The Board contends that the district court erred in reversing its decision to include $105,679.85 in attorney fees as part of the “costs” of its adjudication proceedings under La. R.S. 37:79 B(3). The Board’s decision as to whether attorney fees are included as a “cost” under La. R.S. 37:79 B(3) is a question of law. Thus, we review this issue de novo — without regard for the reasonings set forth in the Board’s Final Decision or the district court’s ruling. See Wooley v. Lucksinger, 09-0571, p. 49 (La.4/1/11), 61 So.3d 507, 554.
Citing Women’s and Children’s Hosp. v. State, Dept. of Health and Hospitals, 08-946 (La.1/21/09), 2 So.3d 397, the Board asserts that we should give deference to its interpretation of La. R.S. 37:79, one of the agency’s governing statutes. We disagree. We only defer to the Board’s interpretation of its own regulations provided that the regulations are promulgated pursuant to statutory grants of authority and the procedures of the Louisiana Administrative Procedure Act. See id., 08-946 at pp. 5-7, 2 So.3d at 401-402. This deference stems from the agency’s unique statutory charge to interpret and apply those specific regulations. See Bowers v. Firefighters’ Retirement System, 08-1268, p. 4 (La.3/17/09), 6 So.3d 173, 176. The Board’s interpretations of its governing statutes and judicial decisions, however, are not entitled to any deference by us. See id., 08-1268 at p. 4-5, 6 So.3d at 176 (citing Entergy Louisiana, L.L.C. v. Louisiana Pub. Serv. Comm’n, 08-0284, p. 11 (La.7/1/08), 990 So.2d 716, 723). Thus, we continue our review of the scope of “costs” under La. R.S. 37:79 B(3) without any deference to the Board’s interpretation.
We find the district court’s interpretation to be legally correct, and affirm its exclusion of the Board’s attorney fees from the calculation of its “costs” under La. R.S. 37:79 B(3). It is a well-settled rule in Louisiana that attorney fees may not be assessed in the absence of specific statutory authority or express authorization by contract. See State, Dept. of Transp. and Dev. v. Wagner, 10-0050, p. 2 (La.5/28/10), 38 So.3d 240, 241. See also Sher v. Lafayette Ins. Co., 07-2441, p. 18 (La.4/8/08), 988 So.2d 186, 201; Favrot v. Favrot, 12-1573, p. 7 (La.App. 4 Cir. 5/1/13), 115 So.3d 1190, 1195. This limited statutory interpretation stems from the exceptional and penal nature of the award of attorney fees. See Cracco v. Barras, 520 So.2d 371, 372 (La.1988). “An award of attorney fees is a type of penalty imposed not to make the injured party whole, but rather to discourage a particular activity on the part of the opposing party.” Langley v. Petro Star Corp. of La., 01-0198, p. 3 (La.6/29/01), 792 So.2d 721, 723 (citing Sharbono v. Steve Lang & Son Loggers, 97-0110, p. 7 (La.7/1/97), 696 So.2d 1382, 1386). Thus, the inclusion of attorney fees in an award stemming from a claim under *400 a particular statute necessitates an express legislative determination that such an award is appropriate and proportional to a particular violation’s affront to society, barring the parties’ contractual agreement to its inclusion.
At the time of Mr. Davis’ violations and adjudication, La. R.S. 37:79 B(3) provided the Board with the authority to “require a licensee or privilege holder to ... [p]ay the costs of any proceedings.” (emphasis added). La. R.S. 37:79 B(3) was [15amended during the 2013 Regular Session of the Louisiana Legislature to provide the Board with the authority to require licensees to pay “all costs of board proceedings, including ... attorney fees.” This entire adjudication, however, occurred prior to the effective date of that amendment. Furthermore, the legislature did not express a retrospective intent in the law, and the amendment is unquestionably substantive under La. Civ. Code. art. 6 as it establishes new rights to attorney fees. See, e.g., Sher, 07-2441 at pp. 15-17, 988 So.2d at 199-201. Therefore, the amendment does not apply retroactively to this case. In reading the statute prior to this amendment, it is clear that attorney fees are not expressly included within the gambit of sanctions which the Board has the authority to impose. The statute simply provides for the “costs of any proceedings.”
The Board, in its interpretation, asserts that attorney fees are impliedly included in “costs.” We hold, however, that attorney fees cannot be impliedly included as a statutory remedy. Furthermore, this argument falters when we examine La. R.S. 37:79 in its entirety, noting that there is specific mention of the inclusion of reasonable attorney fees as part of the remedy for the Board’s enforcement of its order against a non-compliant practitioner or firm in a court of competent jurisdiction. See La. R.S. 37:79 C(2). The availability of attorney fees as a remedy elsewhere in the statute implies their exclusion as a remedy in other sections. See Filson v. Windsor Court Hotel, 04-2893, p. 6 (La.6/29/05), 907 So.2d 723, 728 (“[Wjhen the legislature specifically enumerates a series of things, the legislature’s omission of other items, which could have been easily included in the statute is deemed intentional.”). Thus, the inclusion of attorney fees elsewhere in the same statute precludes their implied inclusion as part of the “costs” of the adjudication proceedings against Mr. Davis.
LfiThe district court correctly reversed the Board’s inclusion of attorney fees as “costs” under La. R.S. 37:79 B(3).
DECREE
The Board’s findings that Mr. Davis engaged in unprofessional conduct are supported and sustainable by a preponderance of the evidence. We affirm the Board’s revocation of Mr. Davis’ CPA license, and the district court’s ruling reversing the Board’s order that Mr. Davis pay its attorney fees. Each party is to pay its own costs of the appellate proceedings. See La. C.C.P. art. 2164; La. R.S. 49:964.1 A.
AFFIRMED.

. Mr. Davis has not assigned as error the amount of the fine or the remainder of the costs.

. Subsections E and F do allow for the taking of additional evidence before the agency or, in cases of alleged irregularities, before the court.

. The violations that the Board found are extensive. They include La. R.S. 37:79 A(4), (5), (7), (8), (11), (12); La. R.S. 37:83 B, D, I; La. Admin. Code 46:XIX:1701 B(l); 1703 B, C; 1707 A(2), (5), (6), (11). These statutes and regulations define the parameters of professional conduct for certified public accountants, and prohibit acts of fraud, professional incompetence, and other dishonorable conduct.

. Mr. Davis also held a Louisiana CPA Firm Permit to operate John W. Davis, C.P.A., L.L.C. See La. R.S. 37:73(12). This permit was also revoked.

. Mr. Davis asserts that the Board’s findings for the amount of additional taxes paid by Mr. Magee and his businesses as a result of filing amended tax returns are not correct, and claims that Mr. Magee substantially lowered his overall tax liability by filing another set of amended tax returns later. The Board does not contest some change in overall tax liability as a result of those filings. This change, however, has no effect on any of the Board’s Conclusions of Law.